**UNITED STATES of America**

v.

**Walter I. JOSLIN, Appellant.**

**No. 23649.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 24, 1970.

Decided Oct. 12, 1970.

---

Mr. Thomas E. Harris, Washington, D. C. (appointed by this Court) for appellant.

Mr. John Ellsworth Stein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT and MacKINNON, Circuit Judges, and DAVIS*, Judge, United States Court of Claims.

DAVIS, Judge:

Appellant Joslin was indicted, in February 1968, on nine charges of housebreaking and three of grand larceny.[1] In March 1968 he pleaded not guilty. The case came on for trial on April 8, 1969. At that time he pleaded guilty to two of the twelve counts (chosen by the prosecutor). These were numbers 6 and 8 concerning entry into the dwellings of Lloyd Symington and Frank Doyle (respectively) with intent to steal. The court questioned the defendant along the lines established by Rule 11, F.R.Crim. Proc., and the 1959 Resolution of the Judges of the District Court for the District of Columbia (see Everett v. United States, 119 U.S.App.D.C. 60, 336 F.2d

---

* Sitting by designation pursuant to Title 28 U.S.Code, Section 293(a).

1. While in state custody in Texas in February 1967, appellant asked to talk to the FBI and told the agent he had committed a housebreaking in the District of Columbia, giving details. At about the same time he wrote the District police with details of various housebreakings he said he had done in the District, and asking for removal and trial there. He was returned to the District in March 1967, after signing a waiver of removal hearing. There then ensued a series of proceedings inquiring into his competency to stand trial. See notes 3 and 7, infra.

979 (1964), and was satisfied with the inquiry.[2] Sentence was deferred.

The very next day, April 9th, Joslin wrote the judge a handwritten letter saying, among other things, that he had not committed the Symington housebreaking, and that he had pleaded guilty the day before only because he was "tired of this long drawn out affair" and of his failure to obtain release because of the delay in prosecution.[3] On April 30th he wrote another letter to the judge which he commenced by stating that "[i]n view of all the facts of this case I am hereby at present standing by my last decision of entering a plea of not-guilty to the charges."

The District Court correctly treated these letters as a motion to withdraw the guilty pleas, and set an oral hearing (for May 16, 1969) on the request. The nature of that brief "hearing" (6½ pages of transcript) forms the crux of our decision to remand the case. The defendant spoke, as did the prosecutor and the appointed defense counsel, but no testimony was taken and there was insufficient inquiry into pertinent factual matters. For the reasons which we now spell out, we are satisfied from the transcript, and the other materials properly available to us on this appeal, that appellant did not have the adequate assistance of counsel and that relevant matters should have been brought out and considered, but were not because of the character of the proceeding.

The transcript of the hearing shows indisputably that the only person who spoke in favor of withdrawal of the plea was appellant himself. His appointed attorney (not counsel on this appeal) spoke, in effect, against grant of the motion, as did the Assistant United States Attorney. In this connection, Joslin's prior relations with his then attorney (the second of three successive appointed counsel in the District Court) are important. This lawyer was appointed, after the first counsel left the area, shortly before appellant's original plea of not guilty in March 1968. In December 1968, the attorney, who had been in communication with Joslin, wrote him that he would shortly file motions to suppress evidence and to dismiss for want of a speedy trial. These motions were never filed, but appellant seems to have believed (prior to his guilty pleas) that at least a motion with respect to speedy trial was filed in March 1969 and soon rejected. As indicated above (note 3, *supra*), Joslin himself filed *pro se*, in March 1969, a habeas corpus petition, alleging both the illegal seizure of evidence and denial of speedy trial. The reason why he filed this paper *pro se* is not clear. But he did state at the hearing on May 16th that, when the case came on for trial on April 8th, he had not seen his counsel "in the year or so he had the case", and that on that day they talked for only about half-an-hour before the case was called. (The attorney did not contradict this statement.) In his first letter of April 9th to the judge after pleading guilty, appellant referred to "a talk with my attorney" before the plea, and "Because of the way he felt about not being able to win the case" appellant agreed to plead guilty to two counts (as originally proposed by an Assistant United States Attorney two years previously); the letter also referred to the attorney's brushing off the delay in the case as "just as much my fault" (with which the letter said appellant did not agree) and to the attorney's failing to mention appellant's habeas corpus petition for release on the ground of denial of a speedy trial. Apparently being informed of this communication to the judge, the attorney wrote Joslin (on April 20th) that "I am astonished by the contents of your letters", indicating that

2. On this appeal, there is no attack on the judge's examination, or on the acceptance of the guilty pleas, at that time.

3. Beginning in January 1968, appellant made efforts to have his case dismissed be- cause of delay. On March 12, 1969, he filed *pro se* a petition for habeas corpus alleging (*inter alia*) that he had been deprived of a speedy trial. This petition was not denied until April 14th. Other efforts are mentioned *infra*.

appellant could withdraw his plea to the Symington housebreaking if he pled guilty to some other count. The attorney added that he felt the habeas corpus matter was not his responsibility.

Appellant's second letter to the judge (dated April 30, 1969) expressly asked the judge to dismiss the attorney and to allow appellant "to have an attorney from the Legal Aid Office. Regardless of what [the attorney] may state to the Court or myself, I am sure of late he has not been acting in my best interest. The only time he has conferred with me on the case during the year or more he has been on the case, was just before I appeared before you on April 8, 1969." There was enclosed a copy of the lawyer's letter to appellant of April 20th (discussed *supra*).

From these materials it should have been clear to the court, before the hearing on May 16th, that Joslin's relations with his lawyer were strained, at best, and that there was a good chance that the attorney could not, or would not, represent him adequately on the withdrawal motion. This was confirmed from the outset of the hearing. The court first turned to appellant and asked him why he wanted to change his pleas. His response began by saying that he felt "my attorney kind of hurried me in this thing."[4] He then gave the reasons why he thought he should be allowed to withdraw his pleas:—he had not in fact committed the Symington offense; he was "confused" by the long delay in trying the case and by his being in custody much of the time; he had spent a considerable part of this period at St. Eliza-

beth's Hospital and at least one doctor there told him he was incompetent.

The prosecution responded to these arguments, and then appointed defense counsel made a statement recounting his own connection with the case, and ending:

> I was prepared to go to trial on this case on the date it was in Court. I had sufficient knowledge and sufficient background of the facts in the case to have been ready for trial. I was ready to go to trial on that date. As I indicated to Mr. Joslin on the date that he entered his plea of guilty, the Government was still willing—somewhat reluctantly—to allow him to enter a plea to two counts of housebreaking. I asked which two counts they wanted and indicated those to Mr. Joslin and he thereafter entered a plea. Mr. Joslin has signed numerous confessions and the letters are available. He has been advised of his rights by counsel, the Federal Bureau of Investigation and the Metropolitan Police Department. He has been formally advised by me. I feel there is a substantial barrier between us and I feel I can no longer represent him.

This statement was not merely neutral on the withdrawal issue; in substance it argued against Joslin. Immediately after it was made, the court denied the motion to withdraw and relieved defense counsel, stating that new counsel would be selected for sentencing.

■ Since the proceeding on May 16th was an integral part of the "criminal prosecution", appellant was, of course,

---

4. "DEFENDANT JOSLIN: I feel that my attorney kind of hurried me in this thing. I had only seen him thirty minutes prior to this trial coming up in the year or so he has had this case and we had made no preparation at all. He informed me that he stood no chance of winning a plea in my favor with a jury or anything else, that I was sewed up tight, so to speak; and I kind of disagreed with that. But, anyway, I was confused and I said, well, what about the suggestion that I had made earlier to Prosecutor Smith about

pleading guilty to two if all the other charges are dropped and he said that sounds like a good idea. He said, let's go ahead with that if that is all right. I said, well—I was confused about it so he said let's go ahead. So I came up here and pled guilty to two charges that [the prosecutor] and [defense counsel] picked out themself up here. I didn't know exactly what the two charges were until after they were read off and then it dawned on me that the Government had no evidence whatsoever."

entitled to counsel on his request to alter his guilty pleas. See, *e. g.*, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). He did not, however, have that assistance. Appointed counsel was technically still the defense lawyer during the hearing, not being relieved until its close, but he did not assume that role; on the contrary he made points against his client and said nothing to support withdrawal of the pleas. It is irrelevant that Joslin was allowed to speak freely himself, or that he made his own arguments in favor of his position. The right to counsel is premised on the fundamental postulate that defendants—even articulate, stable, and intelligent ones— need the guiding hand of counsel at every critical stage. See Gideon v. Wainwright, 372 U.S. 335, 344–345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Here, counsel could undoubtedly have made a better case for withdrawal of the pleas, at least as to the Symington count, than appellant did for himself.[5]

■ There was still another defect in the hearing which likewise calls for remand. At least two issues arose which called for investigation, but no adequate inquiry was undertaken. One matter was appellant's insistence that he was innocent of the Symington charge. This avowal appeared to have some color (as Joslin pointed out in his first letter to the judge) since, when he was released from custody to tour the Northwest section of Washington with the police in order to point out houses he had burglarized, he did not designate the Symington house. His explanation of how he came to be charged with that offense was that he hinted to the police about that episode only because in one of the other houses he had seen a credit card with Senator Symington's name,[6] and that he learned the actual details of the Symington burglary from the police and the FBI. The prosecution merely answered, at the hearing, that appellant had "at. a later time confessed to the Simmons [sic] burglary." We think that, in these circumstances, the court should not have concluded, without further investigation, that the avowal of innocence was mala fide, especially since the appellant made this representation so quickly, the day after he had pleaded guilty, explaining that he was confused at the time of the plea and did not realize until later that one of the two selected counts involved a burglary he did not commit. See Gearhart v. United States, 106 U.S. App.D.C. 270, 273, 272 F.2d 499, 502 (1959).

Another subject which should have been gone into more thoroughly, than by the brief colloquy which occurred below, was appellant's history of mental and psychological problems, as that history may have related to the guilty pleas. He had spent a large part of the two years between the time he was apprehended on these charges and his guilty pleas at St. Elizabeth's.[7] Though held competent to stand trial he was designated as having "Sociopathic Personality Disturbance,

---

5. One cannot disregard, moreover, appellant's history of mental problems as bearing on his need for counsel's aid on the withdrawal motion.

6. Count 6 did not involve Senator Symington's house but that of another member of the family, Lloyd Symington.

7. He was first found competent by the Legal Psychiatric Services. On April 21, 1967, on application of his counsel, the District Court ordered him to St. Elizabeth's for mental examination. The hospital reported him as having "Sociopathic Personality Disturbance, Sexual Deviation (Masochism)", but as mentally competent for trial. He was judicially found competent but was returned to St. Elizabeth's "because [he] has been found to be mentally ill by the Staff of [the hospital]." After a short return to the District of Columbia Jail he was sent back to the hospital because he had "expressed suicidal tendencies and ideas." He was again reported competent by the hospital and so found by the Court. Shortly thereafter, he was again recommitted, symptoms of his illness having reoccurred, "until such time as his present case is finally disposed of." In December 1968 he was transferred to the Jail to await trial.

Sexual Deviation (Masochism)." In his letter to the judge and at his appearance on May 16th, appellant emphasized this history and the possibility that he was incompetent when he made confessions as to various crimes in the District. The Assistant United States Attorney's reply was that "this defendant at no time was declared incompetent by any psychiatrist in this court." The Legal Psychiatric Services and St. Elizabeth's had, indeed, certified him as competent for trial. But appellant stated that one of the doctors at the hospital had indicated doubts of his competence, and it appears that a medical entry did characterize him at one time as "seriously depressed," going on to say that "I think that Mr. Joslin would be much less willing to incriminate himself if he were feeling more hopeful about himself and his future." There was enough known to, and shown to, the court to call for further inquiry. The possible connection between appellant's mental illness (which included the component of masochism [8]) and his guilty pleas deserved more of a probing than it received. Mere competence to stand trial would not necessarily mean that the defendant's psychological problems could not have so affected his original decision to plead guilty as to call for permission to alter that choice.

The rule is that when, as here, an effort is made to withdraw a guilty plea before sentence the defendant is entitled to an appropriate hearing before the application can be denied. Where factual matters bearing directly on the plea are truly in controversy, an oral colloquy is not an acceptable vehicle for resolving them. In this instance, the subjects of appellant's mental state and his understanding of his action at the time of the pleas should have been dealt with, not in the form of colloquy or argument, but by "the following of at least the rudimentary procedural channels for the determination of disputed questions of facts." United States v. Mainer, 383 F.2d 444, 447 (3rd Cir. 1967).

Appellant asks that, without ordering any further inquiry to be made, we determine on the present record that the trial court abused its discretion in failing to authorize withdrawal of the pleas. We do not consider this the preferred solution. The record, as it is, is too thin to warrant a holding of abuse of discretion; there are also too many loose ends. A proper hearing and a better record will enable a sounder determination to be made at the District Court level and, if necessary, on a further appeal.

■■ For these reasons, we vacate the trial court's order denying the motion to withdraw the guilty pleas, as well as the judgments and the sentences, and remand for a proper hearing to determine whether the pleas should be withdrawn, primarily with respect to count 6 (the Symington count).[9] The general standard to be applied (the request for leave to withdraw having come prior to sentence) is whether "for any reason the granting of the privilege seems fair and just." Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L. Ed. 1009 (1927); Gearhart v. United States, 106 U.S.App.D.C. 270, 273, 272 F.2d 499, 502 (1959). If the request was made because appellant thought he had a defense, permission to withdraw "should be rather freely granted." High v. United States, 110 U.S.App.D.C. 25, 29, 288 F.2d 427, 430–431, cert. denied, 366 U.S. 923, 81 S.Ct. 1350, 6 L.Ed.2d 383

---

8. Even laymen know today that masochists often exhibit a need to receive and accept punishment.

9. After refusing to permit withdrawal of the pleas, the District Court sentenced appellant, at a later time, to consecutive prison terms of from five to fifteen years on the two counts to which he had pled guilty. It is therefore important to determine whether to allow withdrawal of the guilty plea as to each of the two counts. Appellant's failure to avow innocence on count 8 (the Doyle count) can, of course, be taken into account on remand but is not conclusive in itself. Everett v. United States, 119 U.S.App.D.C. 60, 63 n. 10, 336 F.2d 979, 982 n. 10 (1964); Bishop v. United States, 121 U.S.App.D.C. 243, 244, 349 F.2d 220, 221 (1965).

**532**

(1961). If either guilty plea is allowed to be withdrawn, the District Court should grant a Government motion to reinstate the 10 counts of the indictment which were dismissed after acceptance of the guilty pleas.

The case is remanded for further proceedings consistent with this opinion.

So ordered.

MacKINNON, Circuit Judge (concurring):

I agree with the result set forth in the opinion by Judge Davis. To my view, however, it conveys a false impression to say that appellant did not have adequate representation by counsel to the extent that such statement carries any implication against the counsel involved. To the extent that the efforts of appellant's counsel may have been frustrated it was caused by the rapidity with which appellant reversed his position and not by anything his counsel did or failed to do. Appellant had orally and in writing voluntarily confessed to certain housebreakings, had voluntarily requested removal from Texas to the District of Columbia for trial, had voluntarily waived a hearing on his removal from Texas to the District of Columbia and had then voluntarily entered a plea of guilty to two counts of a 12-count indictment. The next day he changed his mind and said he wanted to withdraw his plea and plead not guilty. That his counsel could not understand such a sudden reversal of position is not surprising, especially in the face of appellant's voluntary confessions. Faced with such situation counsel made a clear statement of the factual situation to the court and stated that he did not feel he could represent appellant any longer. Counsel's action was timely, commendable and proper and the situation that evolved is not in any way a discredit to him. Under such circumstances the court should have acceded to his request and appointed another counsel to represent appellant. This will be corrected on remand.

It appears on the very inadequate record before this court that there may be some doubt that appellant committed the Symington housebreaking but we do not decide that he did not commit that offense. That is appellant's claim and it should be fully investigated. If he did not commit that crime, it goes without saying that on remand his plea to that count of the indictment should not stand.

The opinion by Judge Davis implies that the trial court on remand should consider appellant's mental and psychological problems in relation to his guilty pleas. An inquiry of such nature, which essentially goes to the voluntariness of the plea, is, of course, always in order in a case where the facts present it; but since appellant, at the time of the entry of the plea, was found to be competent to stand trial, and the court by appropriate inquiries at that time determined that he voluntarily entered his plea of guilty, it seems to me that the validity of the plea from that standpoint had been adequately determined.