John Charles ZOLLER *v.* STATE of Arkansas

CR 84-104

669 S.W.2d 434

Supreme Court of Arkansas
Opinion delivered May 7, 1984

*Wallace, Hilburn, Clayton, Calhoon & Forster, Ltd.,* by: *Joseph H. Purvis* and *John F. Forster, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Michael E. Wheeler,* Asst. Atty. Gen., for appellee.

P. A. HOLLINGSWORTH, Justice. John Charles Zoller was arrested during the early morning hours of November 22, 1982 aboard an aircraft at the Hope Municipal Airport. The plane, piloted by the appellant and a co-defendant, contained 1875 pounds of marijuana and six gallons of hash oil. The airport was under surveillance by both Arkansas and Louisiana State Police when the plane landed. The appellant was charged with possession of a controlled substance with intent to deliver.

The case was originally set for trial on February 28, 1983. On February 24, appellant's counsel withdrew from the case and appellant's new counsel, three attorneys, filed several motions, including one for continuance. All of the motions were denied. During the hearing on the motions, the prosecuting attorney made a plea offer to the appellant. The terms of the offer were as follows: For a plea of nolo contendere, the sentence would be ten years with five years suspended, a $20,000 fine, and first offender treatment with sentencing in the summer of 1983 after it was anticipated that the Arkansas General Assembly would pass Act 344, (Ark. Stat. Ann. § 43-2340 (f)), the Alternative Service Act for first offenders. The trial court was told about the plea of nolo contendere but not about the terms and conditions nor the prosecutor's recommendations on sentencing. The trial court continued sentencing to a later date.

During a court proceeding on April 4, the trial court advised appellant's counsel, who happened to be present, that he should have appellant in court on the following Monday, April 11. The appellant filed a motion to withdraw his plea of nolo contendere. The motion was denied at the sentencing proceedings on April 11. The court then imposed a sentence of ten years with five suspended and a $20,000 fine, omitting the first offender portion of the agreement.

The appellant raises two points on appeal. First, he contends that he had a right to withdraw his plea before sentencing, as provided in Ark. R. Crim. P. 26.1, which reads in pertinent part:

> (a) The court shall allow a defendant to withraw his plea . . . of nolo contendere upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice.

> (c) Withdrawal of a plea of guilty or nolo contendere shall be deemed to be necessary to correct a manifest injustice if the defendant proves to the satifaction of the court that:

> (iv) he did not receive the charge or sentence concessions contemplated by a plea agreement and the proecuting attorney failed to seek or not to oppose the concessions as promised in the plea agreement; or

> (v) he did not receive the charge or sentence concessions contemplated by a plea agreement in which the trial judge had indicated his concurrence and he did not affirm his plea after receiving advice that the judge had withdrawn his indicated concurrence and after an opportunity to either affirm or withdraw the plea.

The appellant argues that he was denied his rights beacuse the judge was both aware of the plea agreement and had indicated he would go along with it, and because the prosecutor failed to seek the agreed-upon concessions.

When the appellant entered his plea of nolo contendere

at the February 24 hearing, the following colloquy occurred:

> Court: I assume that there has been some plea negotiation?

> Purvis: That's correct, Your Honor.

> Court: And I assume that the Court will be made aware of that at some point, which I haven't to this time. I have been advised in regard to Mr. Shearer [a co-defendant] what the recommendation would be.

Other pertinent portions of the February 24 hearing are as follows:

> Court: Have you been extended any promise of reward to induce you to enter a plea of guilty?

> Hall: Other than the plea negotiation?

> Court: Other than the plea negotiation?

> Zoller: No sir.

> Court: Now if you gentlemen in behalf of Mr. Zoller feel that your statement to the Court is sufficient to carry out your recommendation under the plea negotiation then I'm satisfied. . .

> But *I think you know as well as the State knows what your plea recommendation is that you expect the Court to accept is that correct?*

> Hall: Correct.

At the April 11 hearing when the appellant was sentenced, the following took place:

> Court: Let the record state that the Court was of the opinion at the time that the plea was entered on the . . . 24th of February, 1983, that there would be a recommendation of twenty thousand dollar fine, ten years,

five of which to be suspended. *To that recommendation the Court gave the impression I'm sure that the Court would accept that.* The Court will accept that recommendation.

The prosecuting attorney, Mr. Johnson, also testified at the April 11 hearing as follows:

Johnson: [W]e agree that John Zoller be sentenced under the first offender act if said act applied.

Purvis: All right. Did you concur in that?

Johnson: Yes.

Purvis: *And those were material terms were they not to our plea agreement?*

Johnson: *From the defense side, perhaps so.*

Purvis: Did you subsequently advise the Court of the terms of this agreement which had been struck?

Johnson: *I believe the Court asked me in open court if the agreement was the same as for Mr. Shearer and I believe I replied in the affirmative.*

Purvis: All right. Now, *had in fact this same agreement been reached with Mr. Shearer?*

Johnson: *Yes.*

Purvis: All right. Do you recall advising myself and Mr. Zoller at that time, . . . that you felt that the Court would be willing to go along with this particular agreement?

Johnson: Yes.

Purvis: And it was your opinion at that point that the Court would concur in our agreement?

Johnson: Well, I certainly hoped so.

Purvis: *Was the Court also aware of this agreement that you struck with Mr. Shearer?*

Johnson: *I assume so since it was asked in open court.*

Purvis: All right. *Including the recommendation that he be sentenced under first offender should that act be passed?*

Johnson: *Yes.*

The Judge's knowledge of the plea and his indicated concurrence are demonstrated in the passages quoted above. The judge denied that he knew the exact terms of the plea when it was entered. Ark. R. Cr. P. Rule 24.5 requires the trial court to have the plea agreement stated for the record. This rule is mandatory, and this case demonstrates why. Since the failure to state the plea negotiation for the record allowed questions to be raised as to the court's understanding of the agreement, the defendant should be allowed to plea anew to remove any possibility of prejudice. See *Marshall* v. *State,* 262 Ark. 726, 561 S.W.2d 76 (1978). The language of Rule 26.1 is also mandatory in that it provides that the withdrawal of the plea *shall* be deemed to be necessary when any of the enumerated factors are present. The ultimate decision in within the discretion of the trial court and we only reverse if we find an abuse of that discretion. Here, however, the proof is sufficient that the appellant did not receive the sentence concession contemplated by the plea agreement and in which the court had indicated its concurrence. Furthermore, it is apparent that the prosecuting attorney failed to seek the first offender treatment the appellant was promised. The importance of the first offender treatment is that the defendant's record would be expunged after the sentence is served. Without first offender treatment, the appellant would remain a convicted felon after the completion of his sentence.

It is also pertinent that the appellant's motion to withdraw his plea was filed before he was sentenced. The American Bar Association's Standard's for Criminal Justice, 2nd ed. Vol. III, (1982), chapter on pleas of guilty. Standard 14-2.1 states:

> [S]everal substantive changes have been made to this standard. [T]he original standard, . . . provided that "the court in its discretion *may* allow" withdrawal. As revised, this provision states that before sentence "the court *should* allow" withdrawal . . . This change in emphasis reflects the belief that prior to sentencing when there is a basis for the defendant's motion and the absence of ·compelling prosecutorial reason for its denial, withdrawal of a plea . . . of nolo contendere should be allowed.

> There are sound reasons for treating a defendant's motion to withdraw a guilty plea differently when the request is made prior to sentencing rather than afterward. Delay between the taking of the plea and entry of sentence means that conviction is not yet final and no appeal from the conviction is possible. If the defendant thus has second thought about having pleaded guilty, this fact alone should place the judge and others on notice that the plea possibly was entered without sufficient understanding and contemplation. Assuming that the defendant establish a fair and just reason, the burden then shifts to the prosecution to establish substantial prejudice if the defendant's plea were to be withdrawn.

Therefore, the appellant should have been allowed to withdraw his plea of nolo contendere when he realized that he was not going to be sentenced according to the plea agreement in which the judge had indicated concurrence.

The appellant's second point on appeal is that the trial judge abused his discretion in not permitting him to withdraw the plea because it was fair and just to do so. Rule 26.1 also provides:

> (e) At any time before sentencing, the court in its discretion may allow the defendant to withdraw his plea if it is fair and just to do so, giving due consideration to the reasons advanced by the defendant in support of his motion and any prejudice the granting of the motion would cause the prosecution by reason of

actions taken in reliance upon the defendant's plea.

In support of his second point, the appellant named the following factors: (1) he learned after the plea that he had a bona fide fourth amendment claim arising from an allegedly illegal search of his plane while it was in Louisiana; (2) the unperceived collateral effects of his plea on his professional license; (3) the fact that the state was more interested in fine money than a jail term; (4) the fact that the sentencing date was advanced fifty days; and (5) the fact that the state police admittedly failed to make proper disclosure of their case file. In addition, appellant argues that there would be no prejudice to the state if his plea was withdrawn. We have held that if a plea of guilty is entered voluntarily and is not the result of ineffective assistance of counsel, any other possible defense, except for jurisdictional defects, are waived. *Irons* v. *State,* 267 Ark. 469, 591 S.W.2d 650 (1980). Here, since there was no allegation of ineffective assistance of counsel, the appellant's only argument is that his plea was not voluntary. To be voluntary, a plea must be knowingly and intelligently made. The appellant argues that his plea was not knowing and intelligent, because, at the time it was made, he was unaware of the illegal entry into his airplane by the Louisiana authorities which would constitute a defense to the charge, and because he was unaware of the collateral affects of his plea, having been misadvised by an official with the Federal Aviation Administration that a plea of nolo contendere would result in the mere suspension of his pilot's license, rather than revocation. In *Morris* v. *State,* 226 Ark. 472, 290 S.W.2d 624 (1956) we found that the refusal to permit the withdrawal of a guilty plea was within the sound discretion of the trial judge where there was nothing in the record to show that the defendant was induced to enter the plea improperly or that he did so in ignorance of his rights or under any misapprehension of the facts. Here a misapprehension of the facts was demonstrated. ABA Standard 14.2.1(a) provides that a fair and just reason to withdraw a plea prior to sentence is to allow the appellant to assert a defense that previously had been throught to be unavailable. Such was the case here. See also *Miller* v. *State,* 160 Ark. 245, 254 S.W. 487 (1923); and *U.S.* v. *Joslin,* 434 F.2d 526 (D.C. 1970).

At no time did the State present any evidence that they would be prejudiced if the appellant was allowed to withdraw his plea. Because of the lack of prejudice and because of the extreme importance accorded a defendant's right to trial and to pursue all defenses available to him, the appellant should be permitted to withdraw his plea.

Reversed.

DUDLEY, J., concurs.

HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. The record in this case and to some extent the issues are about as confusing as it would be possible to create. However, some things are clear: having been charged in November 1982, with possession of 2,000 pounds of marijuana and six gallons of "hash oil," appellant was scheduled to go to trial on January 31, 1983. Not wanting to go to trial on January 31, he managed to obtain a continuance using a purported conflict between his counsel and a co-defendant as the basis. The trial judge rescheduled the case for trial on February 28. Appellant still did not want to go to trial and so he resorted to a familiar tactic, he discharged his lawyer on the eve of trial and hired new counsel who, of course, needed time to prepare. The newly retained counsel for appellant appeared before the trial judge on February 24 to plead for another continuance. When it became clear the trial judge was not going to grant another continuance they entered into discussions with the prosecutor and arrived at a plea agreement in these terms:

> We will recommend ten years with five suspended, Arkansas Department of Corrections, $20,000 fine payable on date of sentence.

> Kirk D. Johnson

> We will agree to John Zoller being sentenced under the first offender act, *if said act applies.* (emphasis added).

The February 24 proceedings were lengthy and were

interrupted by off-the-record discussions which add to the confusion. The trial judge did not require the parties to dictate the specific terms of the agreement into the record as required by A.R.Cr.P. Rule 24.5, which doubtless would have averted the problems which followed. He may have been told during unreported discussions that the plea agreement was ten years in prison with five years suspended and a $20,000 fine, and indicated that he would follow that agreement in sentencing. That much is supposition, but there is no indication whatever that he was told that if the first offender act applied, John Zoller would be sentenced under it, in spite of the fact that he gave counsel for the appellant repeated opportunities to do so, or to express any reservations whatever about the tender of the plea recommendation. The following portions of the record are typical:

> BY THE COURT: Mr. Forster, I appreciate your statement. I just want this record to be correct in the event that somewhere down the road here comes a Rule 37 or something else. I'm attempting to cover those basis. *Now, if you gentlemen in behalf of Mr. Zoller feel that your statement to the court is sufficient to carry out your recommendation under the plea negotiation then I'm satisfied.*

> BY MR. HALL: [defense attorney] Your Honor, it was my impression that at the time the law — that the law possibly could be construed to mean that he would be chargeable with everything that was in the plane even though it may not have been his. And if the law could have been so found, then he would have — the pecuniary gain could have been the value of everything in the plane and the plane itself maybe. *But we do not contest it and we believe the record is adequate.*

> BY THE COURT: Then I'm wanting this record to be absolutely clear to any review by any one the basis upon which this Court can act on that recommendation. Do all of you agree that the record is so clear at this point?

> BY MR. PURVIS: [defense attorney] Your Honor, I would simply, with the Court's permission, I would

simply add the fact that again and perhaps there is a misconception on my part and perhaps we are — our minds are not in a like channel. Nevertheless, I feel that in view of the nature of the nolo plea . . .

BY THE COURT: You believe that that covers it?

BY MR. PURVIS: I believe that in as much as the Court has established that the plea of nolo has been entered in a voluntary manner.

BY THE COURT: All right.

The majority opinion asserts that the plea agreement included a provision that sentencing would be deferred until the summer of 1983 after it was anticipated that Act 344 of 1983 amending Act 378 of 1975 (Youthful Offenders Alternative Service Act) would become effective if passed.[1] But the record thoroughly refutes that assertion, in fact it is clear that sentencing was to be *at any time* on forty-eight hours notice. If sentencing were not to occur until June 1, that would surely have been included in the plea agreement memorandum quoted above, as otherwise the provision would have no meaning. But if not, then counsel was under a duty to so inform the court when the time for sentencing was being discussed during the February 24 proceedings — yet nothing to that effect appears in the record. To the contrary, the parties *admittedly* left the hearing[2] on the understanding that the court would notify them to appear for sentencing on forty-eight-hour notice. Consistent with that understanding they were notified to appear on April 11 at which appellant presented a motion to withdraw his plea.

In spite of the omission with respect to Rule 24.5, this case should be affirmed because the appellant was not prejudiced by what occurred — in reality he received the specific sentence he bargained for — a ten year prison sentence, with five years suspended, and a $20,000 fine. The argument that first offender treatment was part of the plea

[1]Unexpectedly Act 344 became effective on March 8 because of an emergency clause.
[2]Record, pages 238-241.

agreement is, at best, an illusion. It was not a viable element of the agreement, as the court could have sentenced the appellant under the very terms of the agreement at any time on forty-eight hours notice, irrespective of the first offender act. Thus, the provision was conditioned on the mere hope that three unlikely future events would occur in sequence: 1) that Act 344 would pass; 2) that sentencing would not occur until after passage of the act; and, most importantly, 3) that counsel for the appellant could convince the trial judge at sentencing to exercise the discretion given him under the Youthful Offender Act to sentence appellant as an "eligible offender" (the equivalent of a youthful offender) under Act 344. But appellant's argument thereby defeats itself, because if appellant were sentenced under Act 344 he would *immediately* become eligible for release, for parole, or even for pardon, notwithstanding the stipulated sentence of five years in prison and, therefore, the basic element of the plea agreement would be a nullity. Since the trial court honored the only parts of the agreement that were material, the appellant should not have an absolute right to withdraw his plea to correct a manifest injustice under A.R.Cr.P. Rule 26.1 (a).

HICKMAN, J., joins in this dissent.