**Michael CARRIGAN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2012–CA–000841–MR.

Court of Appeals of Kentucky.

Sept. 13, 2013.

As Modified Sept. 27, 2013.

Shannon Dupree, Assistant Public Advocate, Frankfort, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for Appellee.

Before CAPERTON, COMBS, and LAMBERT, Judges.

*OPINION*

COMBS, Judge:

Joseph Michael Carrigan appeals the judgment of the Barren Circuit Court which found him guilty of nineteen criminal offenses and sentenced him to a total of ten-years' incarceration. After our review, we vacate and remand.

On May 26, 2011, a grand jury indicted Carrigan of nineteen counts of various felonies and driving misdemeanors. Carrigan appeared in Barren District Court for arraignment on June 27, 2011. At that time, he told the court that he was trying to hire an attorney. Carrigan also stated to the court that he did not understand the first-degree robbery charge. The court advised him to consult with counsel. The Department of Public Advocacy (DPA) represented Carrigan at the arraignment. On July 11, 2011, Carrigan appeared in Barren Circuit Court. His counsel argued for bond reduction and then withdrew from representing Carrigan.

Two days later, Carrigan informed the court that he was confident that he would hire someone but he did not know exactly when he would have counsel. On August 1, 2011, the Commonwealth advised the court that it had extended plea offers to Carrigan and to his co-defendant. Carrigan was still not represented by counsel at this point. An attorney informed the court that he had been retained by Carrigan's father to merely review the case.

Two weeks later, that same attorney informed the court that he had declined to represent Carrigan. Carrigan then told

the court that he intended to hire another attorney, and the court set a trial date of December 8, 2011.

On September 26, 2011, Carrigan informed the court that he was still without counsel. He stated that his family was trying to "work out the money situation." On October 17, 2011, Carrigan reported that he had spoken to an attorney but that an agreement had not been finalized. On October 31, 2011, counsel appeared in court with Carrigan, but she had not entered an appearance at that time. She also appeared with Carrigan for a pre-trial conference on December 5, 2011. The Commonwealth reported that Carrigan and his co-defendant had rejected plea offers and had proposed counter-offers.

On December 8, 2011, Carrigan entered a plea of guilty. Notably, one of the charges to which he pled was a first-degree robbery charge, which is categorized as a violent offense in Kentucky Revised Statute[s] (KRS) 439.3401(1)(*l*). At the date scheduled for sentencing, January 30, 2012, the court informed the Commonwealth and Carrigan's counsel that it had received a letter from Carrigan in which he expressed his desire to withdraw his guilty plea. The letter had indicated that Carrigan admitted he was guilty of crimes-but that he did not intend to plead guilty to a *violent* crime. Carrigan's attorney responded by asking for some time to file the motion to withdraw the plea. The court then passed sentencing until the following week.

On February 6, 2012, Carrigan's counsel advised the court that after reviewing Carrigan's letter, she would not be filing a motion to withdraw the guilty plea. Carrigan and his father had begun their search for an attorney who would file the motion. The court once again continued the sentencing.

Carrigan appeared for sentencing again on February 20, 2012. He still had not found an attorney who was willing to file a motion to withdraw his plea. Carrigan's counsel moved to withdraw her representation, and Carrigan said that he would obtain other counsel as soon as possible. The court continued sentencing.

On March 19, 2012, Carrigan appeared for sentencing again but was still without counsel. The court informed Carrigan that as a county prisoner, he was an expense to the county; therefore, they needed to proceed with sentencing soon. Carrigan expressed that he had been displeased with his former counsel's representation and that he was still attempting to retain counsel. The court continued the sentencing hearing for two weeks.

On April 2, 2012, the court called another sentencing hearing for Carrigan. It allowed Carrigan to explain that he had not found counsel because his father had not been able to find an attorney whose rates they could afford. All their money had been spent on Carrigan's former counsel. The court told Carrigan that the sentencing would occur in two weeks. Carrigan reiterated that his family was having difficulty "coming up with the money" and that he was dissatisfied with his former counsel's work.

On April 16, 2012, the court began by declaring that it needed to proceed with sentencing, stating that if Carrigan later obtained counsel, he could file an appeal. The court also stated that it would not allow Carrigan to withdraw his plea based on the content of the letter that Carrigan had sent. The court acknowledged that Carrigan had pled guilty to a violent crime but that he did not consider himself to be violent.

Carrigan responded that he had not committed a violent crime. He reiterated that his former attorney had pressured

him into pleading. He also alleged that counsel's law partner was a relative of one of Carrigan's victims and that she had told him that it would be simple to have his guilty plea withdrawn if he changed his mind prior to sentencing. Carrigan also told the court that counsel based her advice on Carrigan's charges in other counties; however, Carrigan had not actually been indicted in those counties. He also claimed that his former counsel had not fully informed him of the implications of a violent offense conviction.

The court proceeded to sentence Carrigan to ten-years' incarceration. When Carrigan asked how an appeal could be initiated, the court advised Carrigan to write the court and to request an appointed attorney. This appeal—by appointed counsel—follows.

■ Carrigan first contends that the trial court erred by sentencing Carrigan when he was not represented by counsel. We agree.

■ It is fundamental that under the Sixth Amendment of the United States Constitution, "a criminal defendant has a right to be represented by counsel that extends beyond the actual trial to *every critical stage* of the proceedings." *Stone v. Commonwealth*, 217 S.W.3d 233, 237 (Ky.2007). (Citations omitted.) (Emphasis added.) Critical stages are events that place the accused in an adversarial situation. *Cain v. Abramson*, 220 S.W.3d 276, 280 (Ky.2007). The right to representation has been deemed the most basic right of an accused person. *U.S. v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984). (Quoting Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L.Rev. 1, 8 (1956)). If a defendant has been completely denied

counsel, prejudice is presumed, tainting the proceedings and requiring reversal. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047. *See also Stone, supra.*

■ Although authority in Kentucky is sparse on this issue, the Supreme Court of the United States has determined that "sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977). (Internal citations omitted.) Carrigan was not represented by counsel at sentencing, a fact which we conclude rendered the proceeding unfair. Accordingly, we must vacate and remand.

■ While Carrigan's first argument is dispositive, we believe that it is also important to address his other contention—that the trial court erred by not holding an evidentiary hearing on his request to withdraw his guilty plea. After acknowledging Carrigan's letter that expressed his desire to withdraw his plea of guilty, the trial court announced that it wanted "a formal motion." At the time, Carrigan was represented by counsel, and his counsel agreed to write and submit a motion. However, his counsel changed her mind and—in open court—refused to file the motion. Carrigan was unable to afford private counsel; thus, a formal motion was never before the court. We are aware that a defendant's letter to the court is not a pleading that is properly before the court and, therefore, arguably is not ripe for our review. *Dillingham v. Commonwealth*, 995 S.W.2d 377, 381 (Ky.1999). "Nonetheless, we feel it is appropriate to reach the merits of the issue based on the particular facts of this case." *Id.*[1]

---

1. We parenthetically note that there is federal precedent for treating letters to the court as motion filed *pro se*. *United States v. Joslin*, 434 F.2d 526 (D.C.Cir.1970).

■ Kentucky Rule[s] of Criminal Procedure (RCr) 8.10 provides that "any time before judgment the court may permit the plea of guilty ... to be withdrawn and a plea of not guilty substituted." Whether the motion should be granted is left to the discretion of the trial court. *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky.2002). However, if the motion recites that a guilty plea was involuntary, the defendant is *entitled* to a hearing on the motion. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky.2006).

■ ▪ Both in his letter and orally at sentencing, Carrigan claimed that he was pressured into entering his guilty plea. He also alleged ineffectiveness of counsel due to a conflict of interest. Carrigan stated that his counsel's partner was a relative of one of the alleged victims. We also note that beginning with his first court appearance, Carrigan had expressed questions about the charge of first-degree robbery that would result in his classification as a violent offender, the very concern that Carrigan expressed in his letter to the court and verbally at his sentencing. He also alleged that his counsel pressured him to plead guilty because of the alleged charges from other counties, which apparently have never materialized. The court's response to Carrigan's allegations was that if a hearing had been held, the allegations probably would not have been sufficient to warrant granting a motion to withdraw. However, we believe that under these particular circumstances, Carrigan's allegations warranted a hearing and that the trial court erred in not granting one.

We are also persuaded that the court erred in failing to appoint counsel for Carrigan concerning his motion to withdraw.

The courts of Kentucky have not addressed the issue, but many jurisdictions [2] have held that a motion to withdraw and the resulting hearing are critical stages for which counsel is guaranteed. We find these cases to be persuasive and hold that their reasoning should apply in Kentucky.

In its holding that "the Sixth Amendment right to assistance of counsel attaches to the preparation and presentation of a motion to withdraw a guilty plea," the Supreme Court of Georgia provided an extensive list of authority. *Fortson v. State*, 272 Ga. 457, 532 S.E.2d 102, 104 (2000). It relied on: *United States v. Sanchez–Barreto*, 93 F.3d 17, 20 (1st Cir.1996); *United States v. Crowley*, 529 F.2d 1066, 1069 (3rd Cir.1976); *United States v. Garrett*, 90 F.3d 210, 212 (7th Cir.1996); *United States v. White*, 659 F.2d 231, 233–34 (D.C.Cir.1981); *State v. Harell*, 80 Wash. App. 802, 911 P.2d 1034, 1035 (1996); *Browning v. Commonwealth*, 19 Va.App. 295, 452 S.E.2d 360, 362 (1994); *Randall v. State*, 861 P.2d 314, 316 (Okl.Crim.App. 1993); *Berry v. State*, 630 So.2d 127, 129 (Ala.Cr.App.1993); *Martin v. State*, 588 N.E.2d 1291, 1293 (Ind.App.1992); *Beals v. State*, 106 Nev. 729, 802 P.2d 2, 4 (1990); *Lewis v. United States*, 446 A.2d 837, 841 (D.C.App.1982); *People v. Holmes*, 12 Ill. App.3d 1, 297 N.E.2d 204, 206 (1973).

Our research has revealed a case highly similar factually to the case before us: *United States v. Joslin*, 434 F.2d 526 (D.C.Cir.1970). *Joslin* involves an appeal by a defendant who wrote letters to the trial court requesting to withdraw his guilty plea. As in the case before us, the trial court proceeded to sentencing without holding an evidentiary hearing on the letter/motion to withdraw the plea. The D.C.

---

**2.** The Supreme Court of Montana has held that a motion to withdraw a guilty plea is not a critical stage; however, a dissent points out that "[t]he great weight of authority is that a withdrawal-of-plea hearing is a 'critical stage[.]'" *State v. Garner*, 306 Mont. 462, 36 P.3d 346, 357 (2001).

Court of Appeals remanded for a hearing, holding that even though the defendant technically had counsel when the trial court first considered the motion, he effectively did not have counsel because counsel made statements against his client's interest. After the prejudicial statements, counsel withdrew his representation.

■ Carrigan's counsel made statements to the court indicating that Carrigan's request to withdraw the plea should not have been granted. As the *Joslin* court points out, "[t]he right to counsel is premised on the fundamental postulate that defendants—even articulate, stable, and intelligent ones—need the guiding hand of counsel at every critical stage." *Id.* at 530. That right to counsel is denied when counsel does not support his client's request to withdraw his plea. The Circuit court cited *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963), in support of its holding. We note that this year, the bar association of our Commonwealth—along with countless bars across our nation—has celebrated the golden anniversary of *Gideon*—the seminal case that guaranteed the appointment of counsel for indigent criminal defendants.

■ We note that the Supreme Court of Kentucky has held that "[i]f the crime of which the defendant is charged is punishable by confinement and the defendant is financially unable to employ counsel, the judge *shall* appoint counsel to represent the defendant unless he or she elects to proceed without counsel." *Tinsley v. Commonwealth*, 185 S.W.3d 668, 672 (Ky.App.2006).[3] (Emphasis added.) *Tinsley* also cautioned that if the defendant is determined not to qualify for appointed counsel, the trial court has a duty to hold a

hearing according to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *Id.* at 674. In *Faretta*, the Supreme Court recognized one's right to represent himself in legal proceedings. Nonetheless, courts bear the responsibility of informing defendants of the "dangers and disadvantages of self-representation" and must determine on the record that the choice is made knowingly and intelligently. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

The Court of Appeals of Indiana has applied the principles of *Faretta* in a case that is factually similar to the case before us. *Martin v. State*, 588 N.E.2d 1291 (Ind. App.1992). At his sentencing hearing, Martin informed the trial court that he wished to withdraw his guilty plea; he also told the court that he and his privately retained attorney disagreed about the plea. The court allowed Martin's counsel to withdraw, but it did not appoint new counsel for Martin. When Martin came back for sentencing several weeks later, he stated that he had not been able to find counsel because of financial reasons. As in the case before us, the court proceeded both with a denial of Martin's motion to withdraw his plea and with sentencing.

The Court of Appeals reversed and remanded, reasoning that "a motion to withdraw a plea of guilty involves both intricacies of law and advocacy by the prosecutor, thus entitling a defendant to the assistance of counsel." *Id.* at 1293. It held that when a defendant is not represented by counsel, "it is *incumbent* upon the trial court to determine if the waiver of the right to counsel is made knowingly and voluntarily." *Id.* (Emphasis added.)

We cannot conclude otherwise in the case before us. Carrigan was acting *pro se* during several hearings before the

---

3. Neither party briefed this issue, but it is important to avoid on remand; therefore, we address it, *sua sponte.*

court. He made it clear to the court that he was unable to retain counsel for financial reasons. Repeatedly, he stated that his family was trying to muster up money for an attorney. The court never discussed the implications of being unrepresented by counsel, nor did it offer to appoint counsel. It went forward with proceedings in order to move Carrigan from the county jail to state prison—understanding the clear implications of his enhanced cost to the county.

■ Costs notwithstanding, Carrigan was forced to attempt to argue his own motion to withdraw his plea, and he was unrepresented for sentencing. The trial court had little guidance in Kentucky precedent, which is virtually nonexistent on this issue. But persuaded by sound precedent from our sister states, we hold that Carrigan should have received an evidentiary hearing on his attempted motion to withdraw his guilty plea and that counsel should have been appointed for purposes of that hearing and for sentencing-should it have been ordered after the evidentiary hearing.

We vacate the judgment of conviction and remand to the Barren Circuit Court for proceedings consistent with this opinion.

ALL CONCUR.