UNITED STATES of America

v.

**John D. CROWLEY a/k/a Jack Crowley, Appellant.**

**No. 75–1115.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 2, 1975.

Decided Feb. 6, 1976.

Certiorari Denied May 24, 1976. See 96 S.Ct. 2209.

---

Edward B. Friedman, Friedman & Friedman, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., David M. Curry and James J. West, Asst. Dist. Attys., Pittsburgh, Pa., for appellee.

Before MARIS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

John D. Crowley appeals from a judgment of sentence following his plea of guilty to one count of an indictment charging him with selling and delivering counterfeit obligations of the United States in violation of 18 U.S.C. § 473 (1970). Defendant asserts that he was denied the right to counsel on his motion to withdraw his guilty plea prior to sentencing and that the district court erred in denying the guilty plea withdrawal motion. For the reasons given below, we conclude that the absence of counsel on the motion to withdraw the guilty plea was harmless beyond a reasonable doubt on the facts of this case and that there was no error in the denial of that motion.

On July 31, 1974, defendant was charged in a two-count indictment with possessing and concealing seven counterfeit $20.00 Federal Reserve Notes in violation of 18 U.S.C. § 472 (1970) (Count I), and with selling and delivering seven counterfeit $20.00 Federal Reserve Notes in violation of 18 U.S.C. § 473 (1970) (Count II). Defendant entered a plea of not guilty and, with the aid of court-appointed counsel, sought to suppress certain statements constituting a confession that he had made to arresting officers.

At the suppression hearing on October 4, 1974, defendant testified that he did not remember saying several things in his written confession and that he had been told by Agent Daniel Mayer that he would be detained over the weekend unless he gave a statement.[1] In view of this testimony, the Government requested a continuance of the hearing to produce Agent Mayer, who had been trans-

---

1. S.H.T. (Document 21, Crim. No. 74–232, W.D.Pa.), pp. 22–23 and 33–39.

ferred to Washington, D. C. The Government's motion was granted and the suppression hearing was continued until November 21, the day set for trial. At the continued hearing on November 21, Agent Mayer, who had come to Pittsburgh from Washington, D. C. in order to testify at the suppression hearing and the trial, denied under oath the allegation that he had threatened to keep defendant in jail over the weekend. The trial judge denied the motion to suppress, specifically finding that the defendant was not a credible witness and that his testimony was "an incredible attack[s] upon the agent[s]." [2]

At this point, when selection of the jurors for trial was about to begin, the defendant elected to enter a plea of guilty (45a) to the second count of the indictment.[3]

On November 26, 1974, five days after defendant had pled guilty, but prior to sentencing, defendant's court-appointed counsel filed a petition to withdraw his representation. The petition stated that since pleading guilty defendant had indicated a desire to withdraw his plea of guilty and that, due to certain information counsel had received, he believed he was unable to represent defendant in the withdrawal of the guilty plea. A hearing was held on counsel's motion on December 6, 1974, at which time he essentially informed the court that he could not vouch for the veracity of what defendant might say in support of the motion to withdraw his guilty plea.[4] Fol-

---

2. S.H.T. 80–82.

3. After defendant stated that he understood he could receive a fine up to $5,000. or be imprisoned up to ten years, or both, on the second count of the indictment (44a–45a), the judge interrogated the defendant as follows (47a–49a):

"Q Are you aware of any statements that were made out of court, any representations or any agreements that would induce you to come into court and plead guilty?

"A I don't fully understand.

"Q Do you know whether or not there has been any dealing going on by which you were told, perhaps by your lawyer or Mr. Griffith, to come in here and say that there is no agreement, there is no understanding, when in fact there is an understanding or agreement or deal?

"A Yes, sir.

"Q Do you know whether or not there is such a thing?

"A There was no deal made.

. . . . .

"Q Do you realize that if I should accept your plea of guilty that you will not be able at any time in the future to come in under any provision of law and tell the court and me particularly, that you come in today and were told to make statements here when, in fact, you didn't agree to them. Do you know that you could not be able to get me to believe that or it would do you no good in future years to come in and say that.

In other words, your plea now will be accepted and · you won't be permitted to change it.

"A Yes, sir.

"Q You understand that?

"A Yes, sir.

. . . . .

"Q Why are you pleading guilty?

"A I did it."

The United States Attorney informed the court that if a plea was entered to the second count of the indictment, having the lesser penalty, the Government would move to dismiss the first count.

4. Defense counsel's reasons for his motion to withdraw were stated as follows:

"[Defense Counsel]: On November 21, 1974, Mr. Crowley pleaded guilty to one count of a two-count indictment for dealing in counterfeit money. Since that time, he has indicated to me that he wishes to withdraw that plea on the basis that it was not voluntarily given, that he was not fully informed as to the plea and the consequences thereof.

"It is my position that since I had informed Mr. Crowley and had consulted with him prior to the plea that that information which I gave him is confidential between attorney and client.

"I have the further problem that as that information is confidential and I can not divulge it, I have the further problem of presenting Mr. Crowley to the court because I am vouching for the veracity of what he says insofar as I know, so if he says something insofar as the withdrawal of the voluntary plea is concerned, if he says something that I either know to be not true or believe to be not true—

"The Court: If you know it is not true or believe it is not true, it is your obligation to convince the court of that fact.

"[Defense Counsel]: That is correct, but I wouldn't be representing my client in doing that, and that is where the conflict arises." (2a–3a).

lowing this colloquy, the court held counsel's motion to withdraw his representation in abeyance and instructed defendant to proceed *pro se* on his motion to withdraw his guilty plea:

> "The Court: If it is [defendant's] motion, I will [call defendant], and we will hold [defense counsel's] motion in abeyance.

> . . . . .

> "The Court: Mr. Crowley, come forward.

> "You have filed a motion to change your plea from guilty to not guilty. Now, from here on, the burden is yours because you have already heard your attorney say that he can't in good conscience come in and support you on what you have said insofar as the motion is concerned. There it is. You can carry it now." [5]

The court then questioned defendant on the reasons for his motion to withdraw the guilty plea. Defendant stated that when he entered the plea, he had believed that he was pleading guilty to a misdemeanor and not to a felony. He stated that subsequent to the entrance of the guilty plea, he had learned that he could not continue to work as a Pittsburgh fireman because he had pled guilty to a felony (6a–13a). Defendant further testified that when the Government had agreed to dismiss Count I, and thereby to reduce the possible punishment from 25 years to 10 years' imprisonment, he had assumed Count II was a misdemeanor (12a). According to defendant, neither the court, defense counsel, nor the Government had characterized the crime charged in Count II as either a misdemeanor or a felony. No other witnesses were called, and no arguments for or against the motion were presented.

The motion to withdraw the guilty plea was denied. Immediately thereafter, the court denied counsel's motion to withdraw as counsel (12a–13a), and on January 28, 1975, imposed a suspended sentence of three years, placing the defendant on probation for five years.

We will first address the defendant's contention that the judgment of conviction and sentence must be set aside because of the absence of counsel for the defendant at the hearing on his motion to withdraw his guilty plea to the second count of the indictment, and will then turn to his contention that there was error in the denial of that motion, irrespective of the absence of counsel.

## I. *Absence of Counsel*

As interpreted by the Supreme Court, the Sixth Amendment's guarantee that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense" applies to every "critical stage" in a criminal prosecution. See, *e. g.,* *Gerstein v. Pugh,* 420 U.S. 103, 121–23, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Coleman v. Alabama,* 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). At least absent unusual circumstances, a hearing on a motion to withdraw a guilty plea is sufficiently important in a federal criminal prosecution that the Sixth Amendment requires the presence of counsel. See, *e. g.,* *United States v. Joslin,* 140 U.S.App.D.C. 252, 434 F.2d 526, 529–30 (1970); *cf. United States v. Mainer,* 383 F.2d 444, 447 (3d Cir. 1967). In any event, assuming the Sixth Amendment's guarantee does apply, we have concluded that the absence of counsel at such a hearing was harmless beyond a reasonable doubt under the circumstances shown in this record.

In *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the Supreme Court made clear that "all trial errors which violate the Constitution [do not] automatically call for reversal." The Court in *Chapman* also stated, however, that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error. . . . "

**5.** 5a.

As an example of such a right, the Court cited in footnote 8 to the above-quoted sentence, inter alia, "Gideon v. Wainwright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963) (right to counsel)." In reliance on footnote 8, a number of courts and commentators prior to 1971 seem to have concluded that denial of the right to counsel can never be treated as harmless error.[6] See also Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

In our view, neither Gideon v. Wainwright, supra, nor Hamilton v. Alabama, supra, forecloses application of the harmless error doctrine to the denial of counsel[7] in this case. First, this case involves neither the absence of counsel at trial nor a capital offense and, hence, both Gideon v. Wainwright (trial) and Hamilton v. Alabama (capital offense) are factually distinguishable. See also Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) (trial).

Furthermore, we believe that application of the automatic reversal rule of Chapman's footnote 8 to denial of counsel at a motion to withdraw a plea of guilty would be inconsistent with the more recent case of Coleman v. Alabama, 399 U.S. 1, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1970). In Coleman, a majority of the Court joined in Part III of Mr. Justice Brennan's opinion in which he makes it clear that "[t]he test to be applied is whether the denial of counsel at the [particular] hearing was harmless error under Chapman v. California, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)."

 In its most recent opinions, particularly those decided in this decade, discussing the right to counsel, the Supreme Court has observed that the role of counsel at various pre-trial and post-trial hearings depends upon the circumstances of the case and may differ significantly from the role of counsel at trial.[8] See Gerstein v. Pugh, 420 U.S. 103, 121–23, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975);[9] cf. Gagnon v. Scarpelli, 411 U.S. 778, 788–90, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Adams v. Illinois, 405 U.S. 278, 281–83, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972). In accordance with the approach of these more recent cases, this court has held that in certain circumstances ineffective assistance of counsel can be non-prejudicial, requiring the affirmance of a district court judgment in spite of such ineffective assistance. See United States ex rel. Green v. Rundle, 434 F.2d 1112, 1115 (3d Cir. 1970). In light of these cases and Coleman v. Alabama, supra, we conclude that the harmless error doctrine is applicable to denial of counsel at a hearing on a motion to withdraw a guilty plea at least where (1) the defendant alleges neither that he is innocent nor that his original plea was involuntary, cf. Gagnon v. Scarpelli, supra, 411 U.S. at 790, 93 S.Ct. 1756, and where (2)

---

6. See, e. g., 3 Wright, Federal Practice & Procedure (Criminal) § 855 at 369 (1969); Mause, Harmless Constitutional Error: The Implications of Chapman v. California, 53 Minn.L.Rev. 519, 540–43 (1969); Note, Harmless Constitutional Error: A Reappraisal, 83 Harv.L.Rev. 814, 820–21 (1970). None of these authorities cite or discuss Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). See textual discussion, infra. At least one case has repeated this conclusion in 1974, but it did not cite any authority subsequent to the 1967 decision in Chapman v. California, supra; McQueen v. Swenson, 498 F.2d 207, 218 (8th Cir. 1974).

7. Although the record is not absolutely clear, we have assumed, without deciding, that defendant did not have counsel at the December 6 hearing on the motion to withdraw his plea.

8. The Supreme Court has pointed out that "the core purpose of the counsel guarantee [of the Sixth Amendment] was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." United States v. Ash, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973). The Court continued in that case to point out that counsel was required in "a trial-like confrontation," 413 U.S. at 312, 93 S.Ct. 2568.

9. In Gerstein, supra, 420 U.S. at 123, 95 S.Ct. at 867, the Court stated that even though the finding of probable cause affects pre-trial custody and "may affect to some extent the defendant's ability to assist in preparation of his defense, . . . this does not present the high probability of substantial harm identified as controlling in Wade and Coleman."

it is clear that the defendant is not entitled to withdraw his plea. We therefore turn to an examination of whether the denial of counsel in this case was harmless constitutional error.

In this case, defendant was 29 years old, had graduated from high school, and "had schooling in electronics" (46a). At the December 6 hearing, he fully presented his factual argument in support of his motion to withdraw his guilty plea.[10] The Government's attorney did not cross-examine him and no legal arguments were made in opposition to the motion.[11] Moreover, defendant's present counsel has not advanced any legally acceptable reasons or proffered any new facts in support of the motion, and the record indicates that none could have been advanced at the time of the motion. The contention that substitute counsel should have been appointed by the court on or before December 6, so that such counsel could have called defendant's appointed counsel and elicited testimony that Crowley was not properly advised at the time of the change of plea on November 21, is based on pure speculation as to what such testimony would have been and is unsupported by anything in the record.[12]

Furthermore, in view of the facts of this case, it is extremely unlikely that counsel would have been any more effective than the defendant himself in convincing the district court to exercise its discretion to permit withdrawal of the plea. The Government would have been unfairly prejudiced by any grant of the motion to withdraw the plea of guilty since all the trial witnesses were present on November 21 and would have had to be reassembled for a trial held after that date. In addition, defendant was thoroughly interrogated about the basis of his plea at the time it was entered and did not claim thereafter that he was innocent.[12a] Indeed, the record shows that the plea was voluntarily and intelligently made.

Under the circumstances presented by this record, we conclude that the absence of counsel for defendant at the December 6 hearing on his motion to withdraw his plea was harmless beyond a reasonable doubt.

## II. *Motion to Withdraw Guilty Plea*

■ The defendant has no absolute right to withdraw a guilty plea prior to sentencing. The granting of such a motion "lies within the sound discretion of the trial court and its determination will only be disturbed where it has abused its discretion." *United States v. Vallejo,* 476 F.2d 667, 669 (3d Cir. 1973). See also *United States v. Jerry,* 487 F.2d 600, 611 (3d Cir. 1973); *United States v. Ptomey,* 366 F.2d 759 (3d Cir. 1966). In *Vallejo, supra* at 669, the court stated that an application to substitute a plea of not guilty on the ground that such substitution seems fair and just should be determined with "reference to surrounding circumstances."

■ The following relevant factors all indicate that the granting of defendant's

---

10. Cases such as *United States v. Mainer,* 383 F.2d 444 (3d Cir. 1967), and *United States v. Joslin,* 140 U.S.App.D.C. 252, 434 F.2d 526 (1970), where the trial court record shows the existence of unresolved factual issues of (a) misrepresentations inducing the plea (*Mainer*) bearing on the voluntariness of the plea, or (b) innocence and competency (*Joslin*), are clearly distinguishable. As noted below, the only factual issue presented by this record is whether defendant believed the offense charged in Count II was a misdemeanor and, assuming this was his belief, he is not entitled to the withdrawal of his plea for the reasons stated below under II at pp. 1071–1073, including note 13.

11. See note 8, *supra.*

12. We note that any impeachment of a criminal judgment by testimony of a defendant's trial counsel is normally done at a proceeding under 28 U.S.C. § 2255, which is available to defendant. *Cf. United States v. Iannelli* (3d Cir., 1976). There is no support in this record for the contention by defendant's appellate counsel that there has been a violation of the Commentary and Section 3.2(b) of the A. B. A. Criminal Justice Standards Relating to Pleas of Guilty (Approved Draft, 1968) at pp. 69–71.

12a. *Cf. Brown v. United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Schneble v. Florida,* 405 U.S. 427, 430–32, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

motion would not have been fair and just:

A. The failure of the defendant to assert that he was innocent of the charge. See *United States v. Washington*, 341 F.2d 277, 286 (3d Cir. 1965); *Everett v. United States*, 119 U.S.App.D.C. 60, 336 F.2d 979 (1964).[13]

B. The existence of prejudice to the Government through defendant's entering the plea on the day of trial (November 21), when jurors, witnesses and court personnel had been assembled for the trial, and then making the request for withdrawal of the plea several days later (November 26, or thereafter). See *Vallejo, supra* at 669; *United States v. DeCavalcante*, 449 F.2d 139, 141 (3d Cir. 1971).

C. The weakness of the reason for withdrawal of the guilty plea. In this case, defendant alleges that he thought on November 21 that the offense of selling and delivering counterfeit obligations (18 U.S.C. § 473) was a misdemeanor, even though he knew it carried a maximum ten years' imprisonment, and that conviction of a felony made his discharge as a Pittsburgh fireman mandatory. Since defendant knew that he might be imprisoned for ten years, it seems clear he must have known he might lose the right to his job as a fireman by the end of that period. At most, his claim must be that he did not know that he would

automatically be suspended on entry of his plea.

■ In similar circumstances, the courts have held that collateral, but foreseeable, adverse consequences of the entry of a plea do not require the allowance of the privilege of plea withdrawal, which, as in this case, had been denied by the trial judge. In *United States v. Cariola*, 323 F.2d 180, 186 (3d Cir. 1963), this court said:

"To hold that no valid sentence of conviction can be entered under a plea of guilty unless the defendant is first apprised of all collateral legal consequences of the conviction would result in a mass exodus from the federal penitentiaries. The collateral effect of a federal conviction varies, depending upon the offense, and whether state or federal law is involved. State laws are far from uniform. The effect of a conviction as an admission in a later civil action, upon the credibility of the defendant as a witness, his right to vote, his qualification to hold office, its sentencing significance under 'second offender' laws, and its deportation relevance in the case of aliens, are but a few of the areas in which a federal conviction can have important collateral legal significance."

See also *United States v. Sambro*, 147 U.S.App.D.C. 75, 454 F.2d 918, 920 (1971); *Meaton v. United States*, 328 F.2d 379, 380 (5th Cir. 1964).[14]

---

**13.** In *Everett, supra*, Chief Justice Burger (then a Judge of the United States Court of Appeals for the District of Columbia Circuit) said at pages 982–84:

"Far from showing a ' "fair and just" reason' for a change of plea to Count 4, appellant demonstrated by his repeated statements that he had no reason other than wanting a trial on a charge of which he admitted his guilt. . . [A]ppellant offered no defense to the charge, nor did he allege involuntariness or any other factor which would militate against the correctness and truth of his guilty plea to Count 4 which was entered when he was represented by retained counsel. His contention is virtually a claim of an absolute right to withdraw a guilty plea prior to imposition of sentence. . . . Overwhelming authority holds, as has this court, that withdrawal of a guilty plea before sentencing is not an absolute right but

a decision within the sound discretion of the trial court which will be reversed by an appellate court only for an abuse of that discretion.

. . . . .

"We are not disposed to encourage accused persons to 'play games' with the courts at the expense of already overburdened calendars and the rights of other accused persons awaiting trial, whose cases may lose both their position on the calendar and the Court's time and facilities which are thus diverted for no useful purpose."
(Footnotes omitted.)

**14.** In *Sambro, supra*, the court denied a plea withdrawal application based on the ground that defendant did not understand it would result in his deportation, saying at page 920:

"We consider the requirements of Rule 11 are met when the trial court is satisfied after

We conclude that the district court did not abuse its discretion in denying the motion to withdraw the plea.

The January 28, 1975, judgment of the district court will be affirmed.

interrogation of the defendant personally that he understands the direct 'consequences of the plea.' The trial court is not required later on motion to withdraw the plea to consider possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction on a plea of guilty, although of course such consequences, if known, might be evaluated by the trial judge in assessing punishment. Fed.R.Crim.P. 32(a)(1)."

In *Meaton, supra,* a similar application alleged that defendant had not been informed "that as a convicted felon he would be deprived of some of the privileges of citizenship such as voting and foreign travel." 328 F.2d at 380. The Court of Appeals affirmed the denial of the application, stating that "[t]here was no abuse of discretion in the refusal of the court to grant leave to withdraw the plea of guilty because the appellant failed to understand the collateral effects such as loss of civil rights." *Id.* at 381. See also *United States v. Santelises,* 476 F.2d 787, 789–90 (2d Cir. 1973); *Cuthrell v. Director, Patuxent Institute,* 475 F.2d 1364 (4th Cir. 1973), and cases there cited.