**UNITED STATES of America, Appellee,**

v.

**Donald J. TROTT, Appellant.**

**No. 85–5307.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 6, 1985.

Decided Dec. 23, 1985.

As Amended Jan. 2, 1986.

---

John M. Willard, Wilmington, Del., for appellant.

William C. Carpenter, Jr., U.S. Atty., Richard G. Andrews, Asst. U.S. Atty., Wilmington, Del., for appellee.

Before ADAMS, Acting Chief Judge and GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Acting Chief Judge.

John Donald Trott appeals from the district court's denial of his motion to withdraw a negotiated plea of guilty to a charge of operating a continuing criminal enterprise. Because there was an adequate factual basis for the plea and it was entered knowingly, and because Trott has offered no valid reason for withdrawing it, we will affirm.

Trott, a former leader of the Pagans motorcycle gang, was scheduled to proceed to trial January 21, 1985 on numerous controlled substance violations. He pleaded not guilty, and the court was convened as scheduled. As the district judge began to address the jury in preparation for voir dire, however, Trott elected to enter into a plea bargain previously offered by the government. With the court adjourned, from 10:55 a.m. to 12:05 p.m., Trott, his attorney, the assistant U.S. attorney and an FBI agent discussed the agreement, in which Trott was to plead guilty to operating a criminal enterprise in violation of 21 U.S.C. § 848 (1982); the other charges were to be dropped. The government made no commitment to recommend a particular sentence. Trott then returned to court, and announced his plea of guilty. After conducting a colloquy with Trott, pursuant to Fed.R.Crim.Proc. 11, the court accepted the plea.

Two days later, Trott filed a *pro se* motion to withdraw his guilty plea. Subsequent motions to withdraw were filed by his counsel. After an evidentiary hearing, the trial judge declined to allow withdrawal of the plea, and at a later hearing sentenced Trott to 25 years in prison.

On appeal, Trott contends that his guilty plea was invalid under Rule 11 because there was an insufficient factual basis for it and because he lacked an adequate understanding of the law in relation to the facts of his case. Alternatively, he con-

tends that the district court abused its discretion in refusing to permit withdrawal of the plea. Neither contention, however, is well supported.

Under Rule 11, before a plea of guilty may be accepted, the court must establish by personally questioning the defendant that he understands the nature of the charge. *McCarthy v. United States*, 394 U.S. 459, 464–67, 89 S.Ct. 1166, 1169–71, 22 L.Ed.2d 418 (1969); *Woodward v. United States*, 426 F.2d 959 (3d Cir.1970). Also, the court must satisfy itself that there is a factual basis for the plea, *McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171, and this factual basis must be supported by the record. *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

 In establishing Trott's understanding of the charges, the court ascertained that Trott had received a copy of the indictment, had read the count to which he was pleading guilty, and had discussed the charge with his lawyer. Then, after reviewing with Trott the rights waived by a guilty plea, the court explained the essential elements of the charge, and stated that the government would have to prove each beyond a reasonable doubt. Among the statutory elements outlined were that Trott knowingly and intentionally distributed methamphetamine on or about December 23, 1982, that this violation was part of a continuing series of narcotics violations, and that Trott occupied the position of organizer over five or more persons in the undertaking. One by one, Trott was asked if he understood these elements; each time he responded affirmatively. The elements were stated succinctly and in easily understandable language. They were not complex and certainly were capable of being comprehended by Trott, who on two previous occasions had entered into guilty plea agreements. Accordingly, the Rule 11 col-

loquy was sufficient to ensure that the defendant had an adequate understanding of the charge to which he pleaded.

 As to the factual basis, Rule 11 does not mandate that the defendant personally confirm every factual allegation in the indictment. Under Rule 11(f), it is not required "that any particular type of inquiry be made.... An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case." Notes of the Advisory Committee on Rules, 1966 Amendment to Rule 11.

Here, the court heard a lengthy factual proffer by the government of the evidence it planned to introduce at trial, establishing all five elements of the crime. Asked to respond, Trott made the qualification that he had heard "a lot of things I did and a lot of things I didn't do." To clarify the record, the judge then specifically enumerated each of the five elements of the crime and asked Trott if he had committed the acts alleged. Trott responded affirmatively to all but one—that he occupied the position of an organizer or manager of the other persons referred to in the charge. But under questioning Trott went on substantially to confirm this charge as well. He described himself as "an advisor" for all Pagan chapters, said he instructed chapters "when the *mandatory* runs," (emphasis added) or deliveries, were to be made, and confirmed that a gang member obeyed when Trott directed him to drive to Virginia to deliver glassware needed to manufacture methamphetamine.

Taken in context, then, Trott's testimony effectively supported the ample factual basis already established by the government's detailed proffer. This more than satisfies the factual basis requirement of Rule 11.[1]

---

**1.** Indeed, an otherwise valid guilty plea may be properly accepted even if the defendant during the colloquy denies factual guilt, so long as a factual basis is adequately provided by other sources. *See, e.g., North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970);

*United States v. Jerry*, 487 F.2d 600 (3d Cir. 1973). The plea in *Alford* was entered in a state proceeding not governed by the Federal Rules of Criminal Procedure, but under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the requirements of Rule 11 were

Trott also contends that the district court, 604 F.Supp. 1045 (D.C.Del.1985), abused its discretion in denying his motion to withdraw the plea. While this Court has stated that a motion to withdraw a guilty plea prior to sentencing should be granted more liberally than one after sentencing, we have "also made explicit that there is no absolute right to withdraw a guilty plea and that acceptance of the motion is within the discretion of the trial court, whose determination will be disturbed only if the court has abused its discretion." *Government of Virgin Islands v. Berry*, 631 F.2d 214, 219–20 (3d Cir.1980). *See also United States v. Vallejo*, 476 F.2d 667, 669 (3d Cir.1973).

Most important, a defendant must have a "fair and just reason" for withdrawing a plea. *Berry*, 631 F.2d at 219. In evaluating such a motion, we have looked primarily to three factors: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by withdrawal; and (3) the strength of the defendant's reasons for moving to withdraw. *Id.; United States v. Crowley*, 529 F.2d 1066, 1071 (3d Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976).

 Trott's principal reason for withdrawing the plea is that it was not knowing or voluntary. However, the record shows that he had fully considered the plea bargain. He first broached the idea of a plea in August, 1984, five months before he entered it, then discussed it again with his attorney the Friday before the trial, after he failed to succeed on a critical motion to suppress. Finally, Trott spent an hour discussing it on the day it was entered. Moreover, during the 50-minute colloquy, when the court informed Trott of the potential life sentence, Trott interrupted to ask, "Does that mean that if I get a life sentence, Your Honor, there is no possibility of parole?" He also contends that his qualification of the government's factual proffer, as described above, showed that he was "equivocatory" on entering the plea. Yet even as he made this qualification, he immediately affirmed his decision to plead, declaring "I'm taking this plea and I'm coming straight across with it."

Appellant also maintains that he was under emotional duress when he entered his plea. However, the district court found him to be calm and mentally alert, and both his trial attorney and the FBI agent in the case confirmed this impression. Such an evaluation is primarily within the province of the district court, *see Berry*, 631 F.2d at 220; *United States v. Washington*, 341 F.2d 277, 281 (3d Cir.), *cert. denied*, 387 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965), and Trott's submissions do not warrant reversal of the court's appraisal in this case.

The foregoing discussion demonstrates that Trott lacks a valid reason for withdrawing his plea. Nor does he offer a compelling argument on either of the other two factors set forth in *Berry* and *Crowley:* the assertion of innocence and the lack of prejudice to the government. On innocence, Trott again cites his "equivocatory" statement at the plea colloquy, construing it as an assertion, if not of innocence, then of a lesser degree of guilt. However, as discussed above, taken as a whole Trott's responses during the colloquy substantially admitted the degree of guilt to which he pleaded. Thus, his assertion is entitled to little weight.

Furthermore, the government would be prejudiced by allowing withdrawal of a guilty plea at this time. The district court found, based on the opinion of the U.S. Marshal's Service and of the FBI, that at least nine of the government witnesses against Trott needed protection while in Delaware. Thus, the government would be prejudiced by having to reschedule the trial, to provide once again protection for the endangered witnesses, and to expose these witnesses to further risk. Under these circumstances, we cannot say that the district

effectively applied to the states as a matter of due process. Thus, the prerequisites for a valid guilty plea are substantially the same in the federal and state courts.

court abused its discretion in denying Trott's motion to withdraw the plea.[2]

■ Finally, Trott makes the additional argument that the government breached the plea agreement by seeking to forfeit a motor home owned by him, despite promising not to seek forfeiture of any items as a result of the crimes to which he pleaded guilty. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). At the time the plea was taken, the government thought Trott owned no assets subject to forfeiture, for he had stated under oath that he owned no "automobiles or other valuable property." Moreover, the agreement not to seek forfeiture did not occupy a major role in the plea negotiations. In any event, it was the FBI in Cleveland that sought the motor home, and once Trott raised the issue in the district court, the U.S. Attorney's Office represented that the government would not forfeit the motor home if it belonged to Trott. These facts do not demonstrate that the plea bargain was breached in any material way.

Accordingly, the judgment of the district court will be affirmed.

---

**2.** By conducting an evidentiary hearing, the district court forced the prosecution to produce evidence in support of its prejudice claim, and thus did not rely on "mere allegations of prejudice...." *Berry*, 631 F.2d at 224 (Adams, J., dissenting). In *Berry*, this Court upheld the district court's denial, without an evidentiary hearing, of a defendant's pre-sentencing motion to withdraw a guilty plea. The dissent maintained that "[a] motion to withdraw a plea of guilty should be considered with the highest level of care, for it implicates the Sixth Amendment right of the defendant to a public trial by jury." *Id.* at 225. Here, by conducting a hearing and carefully examining the merits of Trott's motion and the government's prejudice argument, the trial court, given the particular circumstances of this case, accorded Trott the proper level of care.