UNITED STATES of America

v.

William Emanuel ALLEN.

Crim. Nos. 85–24, 85–246.

United States District Court,
W.D. Pennsylvania.

Sept. 11, 1987.

Linda L. Kelly, Asst. U.S. Atty., U.S. Atty. Office, W.D. Pa., Pittsburgh, Pa., for plaintiff.

Thomas S. White, Asst. Federal Public Defender, Federal Public Defender Office, W.D. Pa., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

DIAMOND, District Judge.

On January 7, 1986, pursuant to a plea bargain with the government, the defendant, William Emanuel Allen, entered a plea of guilty to all counts of the indictments at Cr. Nos. 85–24 and 85–246 and was sentenced by the court precisely in accordance with the specific terms of that plea bargain. Presently before the court is defendant Allen's motion to withdraw those guilty pleas. The motions will be denied.

### *Background*

On February 12, 1985, a federal grand jury returned a thirteen-count indictment at Cr. No. 85–24 against Allen and two others. The indictment charged Allen with various offenses, including the operation of a Continuing Criminal Enterprise ("C.C.E.") in violation of 21 U.S.C. § 848. On November 11, 1985, the indictment at Cr. No. 85–246 was returned against Allen charging him with several firearm offenses and an additional drug offense.

Trial at Cr. No. 85–24 was scheduled to commence on January 7, 1986, but that morning, after jurors had been assembled, counsel informed the court that they were negotiating a plea agreement and needed additional time to finalize it. S.P. 1.[1] Finally, at 1:30 P.M., counsel for the government and for Allen advised the court that they had arrived at an agreement that pursuant to Rule 11(e)(1)(C), Fed.R.Crim.P., 18 U.S.C., Allen would plead guilty to all counts at Cr. No. 85–24 and Cr. No. 85–246 and, subject to approval by the court, would be sentenced to a term of imprisonment of twenty years under the C.C.E. count and to the forfeiture of certain property and to a special parole term of the remainder of his life for certain of the drug-related offenses. *Id.* After a two-hour plea hearing, the court accepted the plea and sentenced Allen in accordance with the terms of the plea agreement.[2]

Allen appealed. On appeal he argued that there was no factual basis for his plea to the C.C.E. count and that his plea to that count was not knowing and voluntary. The Court of Appeals held "that Allen entered the plea voluntarily and knowingly and that he understood the elements of the C.C.E. offense." 804 F.2d 244, 248 (3d Cir.1986). The Court further noted that we did not have to rely on the defendant's admissions to support a finding that there was a factual basis for the plea. *Id.* at 245, 248. However, the Court of Appeals was uncertain whether we relied upon Allen's insufficient admissions or the government's extensive proffer to provide the factual basis for the plea to the C.C.E. count. Therefore, the Court vacated the sentence and remanded the case for us to determine whether we were satisfied subjectively that there was a factual basis for his plea of guilty to the C.C.E. count. *Id.* at 248. In so doing, the Court explicitly rejected Al-

len's request that it set aside his plea so that he could replead. *See id.* at 247–248.

The Court of Appeals denied Allen's petition for rehearing and rehearing en banc. Allen then petitioned the United States Supreme Court for a writ of certiorari, but this also was denied. ⸺ U.S. ⸺, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987). In both petitions Allen emphasized the argument that a district court may look only to the defendant's admissions to find the factual basis for a plea of guilty. Allen also contended that the Court of Appeals should have set aside his plea and permitted him to plead anew.

On remand, we pointed out that the Court of Appeals' uncertainty as to our basis for finding that there was factual support for Allen's plea stemmed from an incomplete reading of the record. 668 F.Supp. at 967–68. Scarcely five transcript pages and two minutes after the portion of the record that vexed the Court of Appeals, which had been cited to the court by the defendant and inexplicitly accepted as complete by the government, we stated clearly that, relying upon the government's proffer and "previous proceedings, hearings and other matters" in this case, and discounting Allen's quibbles with that proffer, we found an adequate factual basis for the plea. 668 F.Supp. at 968, (quoting S.P. 71–72). We concluded, therefore, that we were "more than satisfied 'that there was a factual basis for the plea,' " 668 F.Supp. at 968, and we ordered the defendant to be returned to the court on April 24, 1987, for the reimposition of sentence.

On April 21, 1987, nearly one month after our opinion on remand, more than one year after Allen commenced his sentence, and three days before sentence was to be reimposed, Allen filed the instant motion to withdraw his guilty plea.

---

1. The court held two hearings pertinent to Allen's guilty plea. On January 7, 1986, we conducted a plea and sentence hearing. The transcript of this hearing will be referred to as "S.P. ___." On April 29 and 30, 1987, we held an evidentiary hearing on the instant motion to withdraw guilty pleas. We refer to the transcript of that hearing as "E.H. I or II ___."

2. We fully described the plea agreement and the proceedings at the plea and sentence hearing in our opinion after remand of this case from the Court of Appeals. *United States v. Allen,* 668 F.Supp. 965 (W.D.Pa.1987).

Notwithstanding the foregoing and the rather obvious fact that the sentence was vacated by the Court of Appeals as a procedural matter on the contingency that on remand this court might find that it had not been satisfied that there was a factual basis for the plea which would support the entry of judgment, Allen frames his motion as one made before the imposition of sentence. This is understandable, since in this posture he must show only "any fair and just reason" under Fed.R.Crim.P. 32(d) to be permitted to withdraw his plea, rather than the more stringent showing required of a post-sentence attack on a plea under 28 U.S.C. § 2255. Allen asks us to interpret the "any fair and just reason" language added to Rule 32(d) in 1983 as prohibiting reliance on the three factors set forth in *United States v. Crowley*, 529 F.2d 1066 (3d Cir.1976). Specifically, Allen contends that we should not consider whether he asserted his innocence and whether withdrawal of his plea would prejudice the government.

According to Allen, he has presented a fair and just reason for the withdrawal of his plea in that the tearful entreaties of his fiancee that he plead guilty and the United States Attorney's "threat" to seek life imprisonment, all coming on the day of his plea, coupled with Allen's belief that the trial judge would accept the recommendation of the United States Attorney, overworked Allen and clouded his judgment when he pled guilty. Allen also argues that the trial judge unintentionally misled him at the plea hearing. He claims that the court assured him that it would not accept his plea unless he admitted guilt as to all elements of the C.C.E. charge, which include the requirement that the defendant have organized, managed or supervised five people in the unlawful activities set forth in 21 U.S.C. § 848. According to Allen, although he admitted to organizing, supervising, or managing only four people, the court mistakenly advised him that he had admitted to five people, and Allen pled guilty in reliance on this misrepresentation.

In the alternative, Allen argues that he has satisfied the *Crowley* factors. He contends that he sufficiently asserted his innocence by maintaining that he has a defense to the C.C.E. charge and that the government has not shown that it would suffer substantial prejudice due to the unavailability of witnesses.

### Discussion

It is unnecessary for us to decide which vehicle is correct, since it is clear that Allen fails to meet the more liberal standard for relief set forth in Rule 32(d).

■ Permission to withdraw a guilty plea under Rule 32(d) is within the discretion of the court; it is not a matter of right. *Government of the Virgin Islands v. Berry*, 631 F.2d 214, 219–220 (3d Cir.1980). Before sentence, withdrawal should be allowed liberally. *Id.* at 219. Nonetheless, the defendant has the burden of establishing that there are grounds for withdrawal. *Id.* at 220.

■ The Court of Appeals for the Third Circuit has prescribed three factors that we should consider in evaluating a motion to withdraw a plea of guilty: "(1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by withdrawal; and (3) the strength of the defendant's reasons for moving to withdraw." *United States v. Trott*, 779 F.2d 912, 915 (3d Cir.1985); *see United States v. Crowley*, 529 F.2d 1066, 1072 (3d Cir.1976). Whether to allow withdrawal depends upon an individualized consideration of the facts of each case. *See Crowley*, 529 F.2d at 1071. The three factors we have quoted are "guideposts" to direct our discretion so that we may determine if "fair and just" reasons exist for the withdrawal of a plea in a principled, not an arbitrary, manner. *See United States v. Martinez*, 785 F.2d 111, 114 (3d Cir.1986).

Allen challenges the applicability of the *Crowley* factors to motions to withdraw pleas made after the 1983 amendments to Rule 32(d). Before 1983, Rule 32(d) lacked any explicit standard for presentence mo-

tions to withdraw pleas.[3] However, courts, including our Court of Appeals in *Crowley,* had fashioned standards to guide the application of Rule 32(d). Allen construes the absence of explicit reference to those standards in the amended version of Rule 32(d) as a repudiation of them.

Even were Allen's argument cogent, it would be foreclosed by *United States v. Trott,* 779 F.2d 912 (3d Cir.1985), and *United States v. Martinez,* 785 F.2d 111 (3d Cir.1986). In *Trott* and *Martinez,* our Court of Appeals reaffirmed the *Crowley* factors and applied them to motions to withdraw guilty pleas under the amended version of Rule 32(d). The *Crowley* standard remains binding precedent even if, as Allen contends, the parties in *Trott* and *Martinez* did not brief or argue the issue of *Crowley's* continued vitality. *See Monell v. Department of Social Services,* 436 U.S. 658, 709 n. 6, 98 S.Ct. 2018, 2045 n. 6, 56 L.Ed.2d 611 (1978) (Powell, J., concurring).

Moreover, in *Martinez,* the defendant did make—and the court rejected—one of the same arguments that Allen urges upon us. Martinez contended that unless the government proved prejudice, withdrawal should be granted. Looking to the Advisory Committee Notes to the 1983 amendments to Rule 32(d), the Court of Appeals concluded that, despite the lack of reference to prejudice in the text of the Rule, the Rule was intended to embody the approach of *United States v. Saft,* 558 F.2d 1073 (2d Cir.1977): " [t]he Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea.' " *Martinez,* 785 F.2d at 115–116 (quoting *Saft,* 558 F.2d at 1083).

Further, Allen's reasoning is not valid. Rules and statutes frequently commit matters to courts' discretion without specifying standards for the exercise of that discretion. Vague and general language often reflects not a prohibition against the formulation of more exact standards but an invitation to interstitial lawmaking. *See* Lane, Legislative Process and Its Judicial Renderings: A Study in Contrast, 48 U.Pitt.L.Rev. 639, 650–51, 659–60 (1987). Committal of a determination to the courts' discretion requires the courts to fashion and follow guideposts for the exercise of that discretion; "[t]hat the court's discretion is equitable in nature, ... hardly means that it is unfettered by meaningful standards...." *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). Indeed, the drafters of the amendments to Rule 32(d) did recommend the application to the amended Rule of judge-made guidelines, similar to those in *Crowley,* developed under the old version of Rule 32(d). *See* Fed.R.Crim.P. 32(d), Advisory Committee Notes.

Invoking the spirit of the Constitution's Bicentennial, Allen echoes Patrick Henry's plea for a Bill of Rights in the Constitution and asks rhetorically, "If we are to have all these requirements for a defendant to withdraw his guilty plea, why aren't they stated in the rule?" Defendant's Brief 10. The history of constitutional interpretation belies Allen's rhetoric. So that the Constitution's broad language may be applied in a principled way to decide cases, the courts have articulated standards to give that broad language manageable meaning. The "Assistance of Counsel" mentioned in the Sixth Amendment is circumscribed by the demanding two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Eighth Amendment's injunction against "cruel and unusual punishments" has received definition in a rather complex analysis of proportion-

---

**3.** Before 1983, Rule 32(d) read:

A motion to withdraw a plea of guilty or *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Rule 32(d) currently states:

If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

ality. *See, e.g., Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). *See also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (four-part test to evaluate speedy trial claims). The "any fair and just reason" language of Rule 32(d) invites similar interpretation.

Following the guideposts established in *Crowley* and reaffirmed in *Trott* and *Martinez,* we hold that there is no fair and just reason for the withdrawal of Allen's guilty plea.

## A. *Assertion of Innocence*

We find that Allen has not credibly asserted his innocence of any of the charges in the twenty counts in the two indictments against him.

■■■ To unsettle a valid guilty plea, a defendant's assertion of innocence must be credible. *United States v. Trott,* 604 F.Supp. 1045, 1049 (D.Del), *aff'd,* 779 F.2d 912 (3d Cir.1985). We should not evaluate the likelihood that the defendant would succeed at trial with his defense, *id.,* but the defendant must offer more than a conclusory protestation that he is not guilty. *See Government of the Virgin Islands v. Berry,* 631 F.2d 214, 220 (3d Cir.1980). Even credible, heartfelt assertions of innocence may not constitute a "fair and just reason" for the withdrawal of a guilty plea, however. *See, e.g., United States v. Jerry,* 487 F.2d 600, 610–611 (3d Cir.1973); *United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975). For the benefit of both the defendant and the prosecution, our system of criminal justice allows a defendant who though believing in his innocence, recognizes the likelihood that a jury will convict him, to plead guilty so that he may lessen the sentence he is likely to receive. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Unless both the defendant and the prosecution are held to their sides of the bargain, plea bargaining would lose its attraction, to the detriment of all parties involved. *See Bor-*

*denkircher v. Hayes,* 434 U.S. 357, 361–64, 98 S.Ct. 663, 666–669, 54 L.Ed.2d 604 (1978); *Barker,* 514 F.2d at 221.

■■ Allen's assertion of innocence, if indeed it amounts to that, is miserly indeed. He seeks to withdraw his plea to twenty counts in two indictments, yet as to nineteen counts—all except the C.C.E. count— he admits his guilt. *See, e.g.,* Appellant's Petition for Rehearing with Suggestion of Rehearing En Banc at ¶ 3 (3d Cir.1986) (Nos. 86–3051 and 86–3069). As to the C.C.E. count, at his plea colloquy, Allen admitted guilt of all elements but one: organizing, managing, or supervising five or more people. *See* S.P. 64. He has never denied that he committed a felony violation of the federal narcotics laws as part of a continuing series of violations, or that he received substantial income from his illegal activities. *See United States v. Grayson,* 795 F.2d 278, 283–84 (3d Cir.1986). Further, as to the element he denies, he contests only the number he supervised. By all accounts of his plea hearing, Allen admitted to supervising *four* people. *See United States v. Allen,* 804 F.2d at 246– 247; 668 F.Supp. at 968; Brief for Appellant at 19 (3d Cir.1986) (Nos. 86–3051 and 86–3069).

We find incredible even this narrow assertion of innocence. At the hearing on his motion to withdraw his plea, Mr. Allen impressed the court as a devious and disingenuous witness, intent on manipulating the legal system to his own ends with little regard to notions of truth or justice. Not once during the hearing did Allen utter the word "innocent." Instead, he claimed that he was not guilty of the C.C.E. charge, or that he had a defense, or that he did not understand how he could be guilty of that charge.[4] We simply do not believe Allen. He has never explained the basis for his alleged belief in his non-guilt. At the plea hearing, the government offered evidence that he supervised at least fifteen people. When government counsel attempted to elicit Allen's position as to each of these

---

**4.** Innocence and non-guilt are clearly distinct both morally, *see, e.g.,* Aeschylus, The Eumenides; Melville, Billy Budd, Sailor; and legally,

*see Smith v. Murray,* 477 U.S. 527, —— ——, 106 S.Ct. 2661, 2667–2669, 91 L.Ed.2d 434, 446– 447 (1986).

people on cross-examination at the evidentiary hearing, Allen invoked his privilege against self-incrimination. We find it mind-numbing that Allen seeks to overturn his guilty plea on such assertions.

Allen based his invocation of the Fifth Amendment privilege on the court's refusal at the evidentiary hearing to confer use immunity on him for his testimony and on his assertion that the government's questioning as to specific individuals he supervised exceeded the scope of his testimony on direct examination. We explained fully on the record our reasons for denying Allen's motion for immunity and to limit the scope of cross-examination. E.H. I 24–34, 80–98, E.H. II 3–13. We will summarize our reasoning briefly.

■■■ The self-incrimination clause prohibits the government from forcing a person to incriminate himself. *See Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964). If a person knowingly volunteers to testify, he waives this privilege and must face the consequences of any admissions he makes. *See Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). However, if a defendant's choice to testify is necessary to protect a constitutional right, he will be immune from any subsequent use of his testimony against him. *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The dilemma of choosing between the constitutional privilege against self-incrimination and another constitutional right requires that the courts fashion judicial use immunity. *Id.* at 393–94, 88 S.Ct. at 976. Painful dilemmas that do not force a defendant to surrender his Fifth Amendment right in order to assert another constitutional right do not merit judicial use immunity. *See McGautha v. California,* 402 U.S. 183, 213–217, 91 S.Ct. 1454, 1470–1472, 28 L.Ed.2d 711 (1971) (A capital defendant could be forced to choose between his right not to testify and the opportunity to present his own testimony in mitigation of sentence at a unitary trial); *Gniotek v. City of Philadelphia,* 808 F.2d 241, 245–46 (3d Cir.1986) (person could be forced to

choose between testifying at employment pre-termination hearing and asserting the Fifth Amendment).

Allen relies on the case of *United States v. Perry,* 788 F.2d 100 (3d Cir.1986). There, the Court of Appeals held that a defendant must be given use immunity so he can testify at a pretrial detention hearing. 788 F.2d at 115–116. The court reasoned that a defendant should not be forced to choose between the constitutional right against self-incrimination and the constitutional right against the deprivation of liberty without the due process of law. Further, the court noted that since the government created this dilemma by seeking pretrial detention and by seeking to use the presumption of dangerousness to put the burden on the defendant to go forward with evidence, the government should bear the cost of foregoing use of the defendant's testimony. *Id.* at 116.

■■■ In contrast, withdrawal of a guilty plea is a privilege, not a right. *Berry,* 631 F.2d at 219–220. The defendant who has pled guilty no longer enjoys a presumption of innocence. On a motion to withdraw his plea, he bears the burden of production and persuasion. *Id.* at 220. The government has not placed him in the dilemma of choosing between incriminating himself and foregoing the use of his own testimony; he has. He may not discharge his burden by invoking the Fifth Amendment. *See United States v. Rylander,* 460 U.S. 752, 758–761, 103 S.Ct. 1548, 1553–1555, 75 L.Ed.2d 521 (1983).

■■■ When a defendant voluntarily testifies, he waives his privilege against self-incrimination for cross-examination as to all matters reasonably related to the scope of direct examination. *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *United States v. Hearst,* 563 F.2d 1331, 1339–42 (9th Cir. 1977). The factfinder may draw adverse inferences from a witness's invalid invocations of the Fifth Amendment during cross-examination. *Hearst, supra; cf. South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

We advised Allen that his invocations of the Fifth Amendment on cross-examination were without merit and that refusals to respond would diminish his credibility in the court's mind, but we did not order him to answer any question. The questions he refused to answer inquired into his guilt or innocence of the specific acts of supervision that made up the C.C.E. charge and his innocence as to the other charges for which he sought to withdraw his plea. This was proper cross-examination.

However, Allen's refusals to respond to cross-examination were not the only reason we disbelieved his testimony. He was evasive. He refused to offer any detail in his assertions of non-guilt, and his portrayal of himself at his plea as distressed and confused differed markedly from the court's observation and recollection of that event. On the whole, his testimony seemed contrived.

## B. *Reasons for Withdrawal*

We find Allen's reasons for withdrawing his plea very weak. Allen argues that the government's avowed intention to seek life imprisonment after trial and his belief that the court would follow this recommendation upset him and impaired his judgment. Allen and his fiancee, Sandra Lynn Trosch, testified that the morning Allen pled guilty they had a tearful meeting during which Trosch begged Allen to plead guilty and to take the government's offer of twenty years. Further, Allen contends that the court misled and confused him at the plea hearing. According to Allen, the court promised him that it would not accept his plea unless he admitted to supervising five people. When the court counted Allen's admissions and told him that it added up to five people, he mistakenly accepted the court's arithmetic; only for that reason did he plead guilty.

That the threat of a heavier sentence after conviction at trial influenced Allen's decision to plead guilty does not justify withdrawal of his guilty plea. Indeed, that threat is essential to plea bargaining.

[A]cceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus, by fear of the possibility of a greater penalty upon conviction after trial....

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." ... It follows that, by tolerating and encouraging the negotiation of pleas, this court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty.

*Bordenkircher v. Hayes*, 434 U.S. 357, 363–364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (citations omitted); *see also North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Life imprisonment without parole is not a threat excessive enough to invalidate a guilty plea. *See Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (threat of the death penalty did not render plea involuntary).

Allen has no basis for his belief that the court improperly would have abdicated its sentencing responsibility and would have followed the recommendation of the United States Attorney to impose a sentence of life imprisonment without parole after trial. The court never threatened Mr. Allen. Upon questioning by the court, Allen admitted that his belief that the court would sentence him to life imprisonment resulted solely from his attorney's assessment of the severity of the charges and the strength of the evidence against him. E.H. II 40–46.

Tearful entreaties from loved ones do not constitute undue coercion to plead guilty. *See generally Iaea v. Sunn,* 800 F.2d 861, 867 (9th Cir.1986) (surveying cases). In deciding whether to plead guilty or to risk trial, a defendant ought to consider the effect his decision will have on his loved ones. Their entreaties may constitute good advice rather than undue coercion. In *United States ex rel. Brown v. LaVallee,* 424 F.2d 457 (2d Cir.1970), after a "stormy and emotional" confrontation at which Brown's mother hysterically begged him to consider the effect that his likely death sentence and electrocution would have on his family, Brown agreed to plead guilty. 424 F.2d at 459–460. The Court of Appeals for the Second Circuit upheld the plea as voluntary and commented:

> The realities of the defendant's situation and the shattering effect of an unsuccessful defense are the very ingredients of a rational choice for one in Brown's position. In the mouths of the prosecutor or the trial judge, these statements might have been coercive; coming from his lawyers and his mother, they were sound advice.

*Id.* at 461.

Allen's meeting with Miss Trosch was not nearly so traumatic, but Miss Trosch's advice was just as sound. The evidence against Allen was strong and his conviction likely. *See* S.P. 71–72. Allen chose a definite twenty year sentence over a possible greater sentence after trial. This was a reasonable and prudent decision, since it is unthinkable that a court would approve a plea bargain in which the parties agreed on a sentence *greater* than that which the court believed was fair and just under all the circumstances; whereas, a court may well approve a plea bargain for a *lighter* sentence than it otherwise would be inclined to impose out of consideration of judicial economy and the overall public good resulting from the avoidance of a lengthy and costly trial.

Based on our observations at, and the transcript of, the plea hearing, we must reject any suggestion that Allen's emotional distress clouded his thoughts and judg-ment. He appeared calm and collected. He asked for and obtained several conferences with counsel during the plea hearing. He freely expressed his thoughts and concerns. He was in control. Of course, we do not doubt that Allen felt some anxiety. A normal, intelligent person ought to feel some emotion when making such a grave and momentous decision. *See* Coleman, "Brain Defect Tied to Utter Amorality of the Psychopath," New York Times, July 7, 1987, at C1, col. 5. (A mark of a criminal psychopath is facing emotional and dangerous situations without any anxiety).

Thus, contrary to Allen's allegations, we find that Allen arrived at his decision to plead guilty through the exercise of well-advised and unimpaired reason. Allen had the benefit of extensive advice before he decided to plead guilty. He consulted with three attorneys as well as with his ex-wife and with Miss Trosch. He discussed calculation of his sentence with a probation officer. The court conducted a lengthy plea colloquy at which it found that he understood the charges against him and that he pled guilty knowingly and voluntarily. The Court of Appeals concurred in these findings.

Allen's argument that the court unintentionally misled him is simply an attempt to rehash arguments he unsuccessfully made before the Court of Appeals. This court did not advise Allen that it would not accept his plea unless he admitted guilt as to each element of the C.C.E. charge, and nothing Allen said at the plea hearing suggested that he was under that impression. Instead, the court stated that it would not accept his plea if it did not believe that he was guilty and specifically pointed out that "he doesn't have to think he is guilty in order for him to be guilty." S.P. 16; *see* S.P. 15–20. Further, the court explained that before it would accept the plea, the *government* must show the factual basis for it:

> MR. WHITE: Your Honor, Mr. Allen wishes me to make it clear on the record that he is willing to plead to the CCE count after he hears the factual basis to it. The reason is that he has difficulty

understanding what the evidence is the government would have against him on that count.

THE COURT: Mrs. Kelly?

MRS. KELLY: Your Honor, the government's position is there is either a plea agreement or there isn't a plea agreement. At this point, it is not customary to proceed in this manner, to require the government to put forth a factual basis for their case before the Defendant decides whether or not he wishes to plead guilty. Up to this point, the government was under the impression there was a plea agreement here, and we are not prepared to put on evidence and then allow the defendant the opportunity to decide, then, whether he wishes to go through with a plea. I don't think that is appropriate nor proper.

THE COURT: That is true. That is not the general way that it is done; however, it is always the case that, before the Court will accept a plea, the Court must be satisfied that there is a factual basis to support the plea, and, technically, before the Court accepts a change of plea, the Court has already interrogated the defendant fully, and the government has offered its summarization of the facts that underlie the particular count.

It is not necessary, of course, for the government to prove its case in any manner similar to what the government would do at trial, but the government will and is prepared, I take it, to summarize each of the charges and the evidence that—or the factual basis that there is for such charges; are you not?

MRS. KELLY: We are prepared to submit a detailed summary of the factual basis for the charges, Your Honor, but I believe that, if there is no plea agreement here, that the government should not be under the burden of putting on a summary of its case.

Now, I think we should understand at the outset whether or not there is a plea agreement, and I do understand that the Court certainly should hear the factual basis for it, but at the appropriate time.

THE COURT: Technically, there is no—there is no plea until the Court has accepted the plea following the Court's going through the Rule 11 procedures, and I don't know whether we have an impasse here or not, but it does seem to me that the government is required to summarize and the Court is required to be satisfied that there is a factual basis before the Court will accept the plea, but, whether the defendant wants to enter a plea or not prior to that time, the Court wouldn't accept it anyway, so I just think maybe there is a misunderstanding here as to what the procedure is.

S.P. 10–12.

As we pointed out in our previous opinion, the court made clear to Allen that it was discounting his misgivings and relying on the government's proffer and prior proceedings in accepting his plea. 668 F.Supp. at 967–69. Allen pled guilty not because of any promises he thought the court had made and kept, but because, as he and his attorney repeatedly assured the court, he wished to take advantage of the government's plea offer. S.P. 15–16, 23, 26, 69.

### C. *Prejudice to the Government*

Allen has not shown a fair and just reason for withdrawal of his plea. Therefore, we do not need to consider prejudice to the government. *Martinez*, 785 F.2d at 115–116; *Saft*, 558 F.2d at 1083. Nevertheless, we may and do consider the substantial prejudice to the government that the withdrawal of Allen's plea would inflict.

Allen argues that the government has not shown that any witness would be unavailable for trial because after the evidentiary hearing Allen's investigator located all eight witnesses that the government claimed were unavailable. Absent the unavailability of witnesses, Allen argues, the government would not be prejudiced.

██ Allen misunderstands the nature of the prejudice that we may consider on a Rule 32(d) motion. The government's probable inability to prove its case at a trial is not the only type of cognizable prejudice. "Prejudice to the Government inevitably

arises when a defendant enters his plea on the day of trial after jurors, witnesses and court personnel are assembled and ready to proceed. *United States v. Crowley*, 529 F.2d at 1072; *United States v. DeCaval-cante*, 449 F.2d 139, 141 (3d Cir.1971)." *Trott*, 604 F.Supp. at 1050, *aff'd* 779 F.2d 912. We may also consider inconvenience to the court. *Barker*, 514 F.2d at 222.

Allen pled guilty the day of trial. Sixty-eight prospective jurors were summoned and were present solely for this trial; no other judge used jurors on that day. E.H. II 95. The court cleared its calendar for six weeks to accommodate this trial. According to the testimony of Agent Todoric, three agents had worked full-time for a month to assemble one hundred government witnesses. E.H. II 89–90. The government has not maintained contact with those witnesses. Three Drug Enforcement agents who put together the case against Allen and who were to testify against Allen, including case agent Carroll, have been reassigned to posts outside the Western District of Pennsylvania. Allen's trial would interfere with their present duties. Perhaps the case against Allen could be reassembled, but only at considerable cost and inconvenience to the United States Attorney's office, the court, prospective jurors, the agents who would have to be brought in from their new posts, the witnesses who have scattered across the country, and the court-appointed and compensated counsel who have represented Allen since his indictment. And nothing can compensate all these people for the time, expense, and inconvenience of the trial they were ready to commence on January 7, 1986.

### Conclusion

A guilty plea is "a grave and solemn act." *Brady v. United States*, 397 U.S. at 748, 90 S.Ct. at 1468. An accused should not trifle with it; nor should a court treat it in a way that encourages defendants to take it lightly. *See Everett v. United States*, 336 F.2d 979, 984 (D.C.Cir.1964) (Burger, J.). Likewise, while post-conviction remedies have played an indispensable role in securing to defendants fundamental rights, misuse of those remedies to mount frivolous attacks on valid convictions only engenders disrespect for the legal system.

Mr. Allen pled guilty on the day of trial only after he sought the advice of his ex-wife and fiancee, consulted with three attorneys and a probation officer, and heard an extensive summary of the government's case against him. His plea was part of a plea bargain in which the government recommended a sentence substantially less than that which he could have received after a conviction at trial. The court conducted a lengthy plea hearing during which Allen conferred freely with counsel and at which Allen repeatedly assured the court that he wanted to plead guilty. The court accepted the plea and imposed the sentence for which Allen had bargained. The Court of Appeals found that Allen's plea was knowing and voluntary and that there was a factual basis for it in the government's proffer. We allowed Allen ample opportunity to present present evidence and brief his motion to withdraw his plea. Nothing he has presented or argued justifies withdrawal of his plea under the precedents or within our discretion. After all of this, withdrawal of Allen's plea would be unfair and unjust.

Allen's motion will be denied. An appropriate order will follow.